（October 3, 1912.)

CARTER McVINE TOBEY, Appellant, v. J. H. BRIDGE-WOOD, W. T. ROBINSON and MARY BRIDGE-WOOD, Respondents.

[127 Pac. 172.]

PERMIT TO APPROPRIATE WATER—STATE LAND—POWER OF STATE BOARD OF LAND COMMISSIONERS—CONVEYANCE.

(Syllabus by the court.)

1. Where a permit to appropriate public waters upon lands belonging to the state is issued by the state engineer, such permit is an inchoate right which may ripen into a legal and complete appropriation only upon the completion of the work and the application of the water to a beneficial use, and confers upon the person to whom the permit is issued no right under such permit against a stranger who subsequently secures from the state a better and higher right than is vested by virtue of the permit.

2. A permit to appropriate the public waters at a point upon state lands, issued by the state engineer, is not a lease of the land where the location is made, neither is it a deed of sale of the land at a point where the water is to be taken.

3. In order to initiate the right to appropriate public waters of the state at a point upon land belonging to the state, it is necessary for the applicant to enter land owned by the state of Idaho for the purpose of making the necessary examination and surveys, maps and plans required in order to make a proper application to the state engineer for a permit, and the entering upon the state lands for the purpose of making appropriation without having the right to make such entry, either by purchase or condemnation proceedings, as provided by law, would be a trespass upon said lands, under the provisions of sec. 1578, Rev. Codes.

4. Under the constitution and the statute of this state, the governor, superintendent of public instruction, secretary of state, attorney general and state auditor constitute the state board of land commissioners, and have the direction, control and disposition of the public lands of the state under such regulations as may be prescribed by law.

5. The constitution and statutes of this state circumscribe the direction, control and disposition of the public lands of the state, in that such lands shall be held in trust, and may be disposed of only at public auction for the use and benefit of the respective objects for which such land has been granted to the state, and limit the power of the state land board with reference to the disposition of such land to leasing, sale or condemnation, and that no land shall be sold or condemned for less than its appraised value, nor for less than ten dollars per acre.

6. The statutes of this state clearly grant the right of way over and upon any and all lands owned or controlled by the state to all persons for the purpose of constructing and maintaining any ditch, canal, conduit or other works for the diversion or carrying of water for any beneficial purpose, and provide that no property shall be taken for such purpose until just compensation shall be paid therefor, to be ascertained in the manner prescribed by law for the taking of private property for a public use.

7. The method and manner of securing private property for public use is regulated by law, but does not apply until just compensation shall be paid therefor, to be ascertained in the manner prescribed by law for the taking of private property for public use, and the manner of ascertaining what is a just compensation for the taking of private property for a public use is prescribed by law, and is either by contract with the owner of the land sought to be taken, or by condemnation proceedings.

APPEAL from the District Court of the Fourth Judicial District for Elmore County. Hon. Edward A. Walters, Judge.

Action to determine the rights of two different persons to the right to enter upon state land and for an injunction. Judgment modified.

D. C. McDougall, Attorney General, files brief on behalf of the State, but cites no authorities.

Perky & Crow, for Appellant.

The permit of the state engineer gives only an inchoate right, and is not in itself an appropriation of the public waters of the state, but is merely the consent of the state to such appropriation, to use public waters, under the manner of an appropriation sanctioned by law. (*Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365.)

The permit of the engineer gave no right to use it to interfere with the vested right of appellant. The state engineer has no right, power or authority to interfere with vested rights. (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488.)

The respondent and her agents and employees, until granted the right thereto by the state land board, were mere trespassers. Their acts of appropriation were founded on trespass. Being founded on trespass, such appropriation would be void as against the land owner whose land is trespassed upon. (1 Wiel, Water Rights in the Western States, 3d ed., sec. 221, and cases cited; *Prentice v. McKay,* 38 Mont. 114, 98 Pac. 1081; *Smith v. Benniff,* 24 Mont. 20, 81 Am. St. 408, 60 Pac. 398, 50 L. R. A. 741; *Curtis v. La Grande Water Co.,* 20 Or. 34, 23 Pac. 808, 25 Pac. 378, 10 L. R. A. 484; *Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76.)

The fact that a party has a water right gives him no right to enter the lands of others for the purpose of constructing canals or ditches across them, except over the lands of the United States. He must obtain that easement or right of way by purchase or condemnation. (*Swank v. Sweetwater etc. Co.,* 15 Ida. 360, 98 Pac. 297.)

J. G. Watts, for Respondents.

This court has held that the public auction provision of the constitution must give way to the sovereign right of emi-

nent domain, but its reasoning would seem to preclude any other means of obtaining title to state lands except at public sale.   (*Hollister v. State,* 9 Ida. 8, 71 Pac. 541.)

The legislature cannot authorize the land board or anyone else to do an act with reference to state lands that is forbidden by the constitution.   (*Balderstone v. Brady,* 17 Ida. 567, 107 Pac. 493; *Rogers v. Hawley,* 19 Ida. 751, 115 Pac. 687.)

Mary Bridgewood has a permit, or, as this court puts it, the consent of the state to acquire real property.   It matters not that the water she desires to appropriate is on state land—her right to appropriate is in no way impaired.   (*Idaho Power & Trans. Co. v. Stephenson,* 16 Ida. 418, 101 Pac. 821.)

A wrongdoer against the private land owner has no vested right until prescription has arisen, but in the meantime may hold possession against anyone but the true owner.   (Wiel on Water Rights in Western States, 3d ed., sec. 246, and cases cited.   See, also, sec. 625 et seq.)

One right was of equal sanctity under the law with the other; the intervenor's being the prior right, the appellant took the property burdened with her right.   The land was impressed with intervenor's water right at the time appellant purchased.   (*Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76.)

STEWART, C. J.—This action was brought in the district court of Elmore county by the appellant against J. H. Bridgewood and W. T. Robinson, for the purpose of obtaining a restraining order, restraining the respondent from entering upon certain premises held by the appellant as a reservoir site.   Mary Bridgewood was permitted by the trial court to intervene as a defendant, and is the real defendant in the case, and the one who filed an answer and cross-complaint denying the allegations of the complaint and alleging facts showing a pretended right existing in said Mary Bridgewood, by reason of having been granted a permit to appropriate water on the said land by the state engineer.   The cause was submitted to the trial court upon a stipulation of facts, and

the trial court made findings and entered judgment for respondent.

The facts as shown by the record are as follows: That Mary Bridgewood, the respondent, on the 19th day of November, 1908, made application to the state engineer for a permit to appropriate the public water of the state from a subterranean channel at a point on the southeast quarter of the northwest quarter of section 13, township 3 south, range 6 east, of Boise meridian, the point of diversion being at a small seepage indicating an underflow of water, and that in said application said Mary Bridgewood stated her intention to develop the water by finishing a project started by Charles Abbott, or by sinking a well, or both; that such application for permit was made for the purpose of irrigating 80 acres of land described as the south half of the southwest quarter of section 13, range 6 east, of Boise meridian; that such land is arid in character and will not grow crops without artificial irrigation; that the application for permit was approved by the state engineer on November 28, 1908, and provided that work should begin on the project on January 27, 1909, and the work of diversion should be completed on or before November 28, 1910; that on the 18th day of September, 1909, the respondent, Mary Bridgewood, entered upon the southeast quarter of the northwest quarter of said section 13, township 3 south, range 6 east, with a well-drilling machine, and proceeded to the point indicated in the permit held by the respondent and commenced sinking a well for the purpose of developing water appropriated by respondent under said permit; that on the 19th day of November, 1908, and the 18th day of September, 1909, and continuously from the time that the respondent made application to the state engineer for permit to appropriate the public waters of the state, and up to the 12th day of October, 1909, legal title to the southeast quarter of the northwest quarter of said section 13, township 3 south, range 6 east, was in the state of Idaho; that prior to the entry upon said land by appellant, application was made to the state land board by appellant to lease said land, and that such application to lease was re-

fused by the board on the 24th of September, at which time the board notified the appellant that "the board decided not to lease, but would sell the land in question under provision act mentioned our letter 21st," and the letter contained the following: "If we understand you aright you desire the land for reservoir purposes. If this is true, we would suggest that you apply for the purchase of the land for reservoir purposes, as provided for in Senate Bill No. 108, page 527, in the 1907 Session Laws." That in compliance with the proposal of the board, on the 25th day of September, 1909, the appellant made formal application to purchase the land under the law referred to, and on the 3d of October, 1909, completed his survey of said land for reservoir purposes, and mailed the same to the land board with a check for $90 and the tracings and field-notes for said reservoir site, which said check and field-notes were received by the state land board on the same day; that on the 12th day of October, 1909, said land board made and executed its deed to the plaintiff for the following described tract of land. The deed to said tract of land contains the description of said land, and it will not be here stated. The deed referred to is as follows:

"KNOW ALL MEN BY THESE PRESENTS, That for and in consideration of the sum of Eighty-seven and 20/100 ($87.20) dollars, lawful money of the United States, receipt of which is hereby acknowledged, and in pursuance of the statutes in such case made and provided, there is granted unto Carter McVine Tobey, a right of way over and across the following described tract of land, for reservoir purposes, to the extent described herein, and as shown more fully on plat filed in the office of the state board of land commissioners of the state of Idaho at their office at Boise, Idaho, to wit:

"A triangular tract of land situated in the southeast quarter of the southeast quarter of the northwest quarter of section 13, township 3 south, range 6 east, B. M., containing in all 8.72 acres, more or less.

"To HAVE AND TO HOLD, all and singular, the within described premises for the purpose of constructing and maintaining a reservoir thereon, together with the appurtenances,

unto the said Carter McVine Tobey and his assigns forever, according to S. B. #108, 1907 Ses. Laws.

"IN WITNESS WHEREOF, I, James H. Brady, governor of the state of Idaho, and ex-officio president of the state board of land commissioners of said state, have hereunto set my hand and caused the seal of said board to be hereunto affixed this 12th day of October, 1909.

"JAMES H. BRADY,<br>"Governor and President."

That the point at which the defendants were sinking said well was within the boundaries of the land described above; that on the 4th day of October, 1909, this action was commenced in the district court, and a restraining order was granted, and at the time of granting said order the well had reached the depth of 127 feet, and Mary Bridgewood had paid therefor the sum of $2.50 per foot; that the purpose of the plaintiff in acquiring the tract of land from the state was to store water for beneficial purposes.

From these facts the court found as a conclusion of law that the right acquired by Mary Bridgewood, the respondent, under her permit from the state engineer, dated November 28, 1908, was and is a valid property right of which she cannot be deprived by plaintiff, except by due process of law, either by purchase or by condemnation proceedings and an award of damages, and is prior in time to the deed of October 12, 1909, made by the state land board to appellant; that in the absence of any action of the appellant to acquire the right of Mary Bridgewood, the plaintiff's rights, if any he have, are subject to the prior right of the respondent; that the plaintiff had no right, title or interest in the property in controversy on the 4th day of October, 1909, and was not on said date entitled to a restraining order; that the defendant, respondent, was lawfully on said premises in controversy, and was not a trespasser as against the plaintiff on the 4th day of October, 1909, the date on which the restraining order was issued, and that the restraining order was improperly issued. Judgment was rendered accordingly. This appeal is from the judgment.

The respective parties base their respective claims upon the
following propositions: First, the claim of respondent is
based upon a permit issued by the state engineer to the re-
spondent on the 28th day of November, 1908; second, the
claim of appellant is based upon an application to purchase
land, made by appellant, under an act of the legislature of
this state, approved March 15, 1907, Sess. Laws 1907, p. 527,
and a deed issued by the governor and *ex-officio* president
of the state board of land commissioners to the appellant
upon said land.

Upon the argument this court realized that the questions
involved might concern the affairs of the state, and call in
question the power of the state engineer to grant a permit
to appropriate water upon state lands, and the rights of the
party to whom such permission is given, and likewise the
power and authority of the state board of land commissioners
to make a deed of conveyance of state land to an individual
perpetually for a reservoir site, without such land being ob-
tained by purchase at a public auction of said lands by said
board or after condemnation proceedings brought for such
purpose.  For these reasons the court directed that the at-
torney general of the state be informed of the issues pre-
sented in the cause, and be given an opportunity to file a brief
upon these questions, and this has been complied with by the
attorney general's office.

Under the issues presented by this record, not only the
parties to the suit have been represented, but likewise the
rights and interests of the state and the powers of both the
state engineer and the state board of land commissioners
have been presented as viewed by counsel for the parties and
the attorney general's office, and also the rights of the state
and the departments whose powers are called in question.

The first question, then, to be considered is, the right that
was acquired by the respondent by the granting to the re-
spondent of the permit by the state engineer, dated November
28, 1908.  Sec. 1578, Rev. Codes, provides: "All persons
using or occupying any state land without a lease, and a[ll]
persons who shall use or occupy state lands for more tha[n]

thirty days after the cancellation or expiration of a lease, shall be regarded as trespassers, and upon conviction shall be fined in a sum of not less than twenty-five nor more than one hundred dollars,'' etc. By this provision of the statute it seems to have been the intention of the legislature to declare as trespassers ''all persons using or occupying any state land without a lease,'' and that they shall be punishable by fine, and making likewise the bondsmen of a lessee of state land liable for all damages sustained by the state by reason of a trespass of a lessee after the expiration of such lease. The granting of a permit by the state engineer cannot be construed into a contract leasing state land, for the reason that the state engineer has no right or authority to lease state land, therefore the granting of a permit by the state engineer to appropriate water upon state land cannot be construed as a lease of such state land.

In the case of *Speer v. Stephenson,* 16 Ida. 707, 102 Pac. 365, this court had under consideration the rights accruing to the applicant to whom a permit is granted by the state engineer to appropriate the public waters of the state, and in the discussion it is held: ''The permit thus provided for took the place of the posting of notice as required under the act prior to 1903, and merely gave the applicant an inchoate right which could ripen into a legal and complete appropriation only upon the completion of the works and the application of the water to a beneficial use. The right given by the permit is merely a contingent right, which may ripen into a complete appropriation or may be defeated by the failure of the holder to comply with the requirements of the statute.

''The permit, therefore, is not an appropriation of the public waters of the state. It is not real property under the statutes. (Rev. Codes, sec. 3056; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.,* 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485.) A permit, however, is the consent given by the state to construct and acquire real property. In order to acquire a permit the statute provides that the person, association or corporation, intending to acquire the right to the ßeficial use of the waters of any natural stream, etc.''

This doctrine is also announced in the case of *Nielson v. Parker*, 19 Ida. 727, 115 Pac. 488.

Under this rule the respondent acquired, by reason of his application and permit to appropriate the public water upon lands belonging to the state, an inchoate right which could ripen into a legal and complete appropriation only upon the completion of the work and the application of the water to a beneficial use, and no right was conferred upon the respondent under such permit as against a stranger who secures from the state a better title than was vested by virtue of the permit. Such permit is not a lease or deed.

In this case, in order to initiate the right to appropriate water, under the provisions of sec. 3254, Rev. Codes, at a point upon land belonging to the state, it is necessary for the applicant to enter upon land owned by the state of Idaho for the purpose of making the necessary examination and surveys, maps and plans required in order to make a proper application to the state engineer for a permit, and the respondent, by so entering and occupying said land of the state in making such examination and surveys, would be a trespasser upon said land, under the provisions of sec. 1578, Rev. Codes.

In the case of *Marshall v. Niagara Springs Orchard Co., ante*, p. 144, 125 Pac. 208, this court had under consideration the right to enter upon private lands for the purpose of initiating the right to appropriate public water, and held that unless such right of entry was first procured by purchase or agreement with the owner or secured through condemnation proceedings, after compensation was determined, such entry was void, and that a permit issued by the state engineer for the right to appropriate such land had no force or effect. We see no reason for not applying the same rule to state land; when the entry upon state land has not been secured, either by an agreement with the state or by condemnation proceedings, for the reason that sec. 1578 specifically declares that such entry is a trespass. In the above case the court says: "Better reasoning is with the proposition that an appropriation of water at a point upon private land cannot be made

by trespass, and that where an attempt is made to initiate the right to appropriate the public water of the state by trespass upon private property, such initiation of such right is void as against the owner of such land.''

In the present case, however, the state has not seen fit to make any claim against the respondent, that the entry upon said land was a trespass, and seems to have recognized and assented to such entry by the issuing to the applicant of the permit to make an appropriation upon state land, by making no contention against the state engineer's issuing such permit, and the appellant is not in a position to contest the right of the respondent, unless the facts show a legal right in the appellant, by reason of the application to purchase the land upon which such entry was made, and the deed to such land made by the state board of land commissioners. Under the facts in this case, however, we are not inclined to determine the rights of the respondent as between the respondent and the state, and find it only necessary to hold that the appellant cannot defeat the rights of the respondent under the permit without first showing that the appellant has a superior right or title to that of the respondent.

This brings us to the question of the claim of the appellant to the right and title acquired by reason of the application to purchase said land, and the title conveyed by the deed set forth in this opinion. This is a very serious and important question, and the court realizes fully the effect that may result from the conclusion of the court in the determination of the power and authority of the state land board.

Under the provisions of the constitution of this state, art. 9, sec. 7, ''The governor, superintendent of public instruction, secretary of state and attorney general shall constitute the state board of land commissioners, who shall have the direction, control and disposition of the public lands of the state, *under such regulation as may be prescribed by law.*'' This section was amended by Amendment No. 14, which became effective November 28, 1910, and by such amendment the state auditor is also designated as a member of the board of land commissioners.

In the same article, sec. 8, it is provided: ''It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the lands heretofore, or which may hereafter be, granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor: Provided, that no school land shall be sold for less than ten (10) dollars per acre. . . . . The legislature shall, at the earliest practicable period, provide by law that the general grants of land made by Congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of the respective objects for which said grants of land were made, and the legislature shall provide for the sale of said lands from time to time and for the sale of timber on all state lands and for the faithful application of the proceeds thereof in accordance with the terms of said grants.''

These constitutional provisions provide who shall constitute the state board of land commissioners, and the power and authority vested in said board, in granting such board the direction, control and disposition of the public lands of the state, *under such regulations as may be prescribed by law;* it is also provided in said section 8 that the legislature shall, ''at the earliest practicable period, provide by law that the general grants of land made by Congress to the state shall be judiciously located and carefully preserved and held in trust, *subject to disposal at public auction for the use and benefit of the respective objects for which said grants of land were made, and the legislature shall provide for the sale of said lands from time to time.*''

It will be observed that the above provisions of the constitution invest the direction, control, and disposition of the public lands of the state, under such regulations as may be prescribed by law, in the state board of land commissioners, and the legislature is invested with the power and authority to provide by law that the general grants of land by Congress to the state are held in trust, *subject to disposal at pub-*

*lic auction,* for the use and benefit of the respective objects for which said grants of land were made, and by this grant of power to the legislature the constitution has circumscribed the direction, control and disposition of the public lands of the state, in that such lands shall be held in trust, and can be disposed of only at public auction for the use and benefit of the respective objects. It would appear, therefore, that an inhibition is placed upon the legislature in enacting a law which provides for the disposition of lands granted to the state by an act of Congress, in that such disposal shall be at public auction.

To carry out the above sections of the constitution, the legislature has enacted sec. 1538, Rev. Codes, which creates a state board of land commissioners, and such law also provides for the officers thereof, and the meetings and reports, etc., and by sec. 1572 of the Rev. Codes, it is provided: "The state board of land commissioners may lease any portion of the land of the state, at a rental of not less than five per cent per annum, on the valuation fixed by the state board, except as hereinbefore provided. . . . . "; while sec. 1573 provides that all leases of said land, except mineral leases, shall be conditional upon the payment of rental annually in advance, and sec. 1574 provides that no lease or rental shall be for a longer term than five years, and sec. 1576 provides, in leasing state lands the state board of land commissioners shall require of all lessees such bond as shall secure the state against loss or waste or occupation of the land for more than thirty days after the cancellation or expiration of said lease, unless the said lessee becomes the purchaser of the land. Then follows sec. 1578, heretofore referred to, as to who are trespassers upon said land. In sec. 1579 the legislature has enacted into the statute practically the provisions of art. 20, sec. 8 of the constitution above referred to, and in that section of the statute the state board of land commissioners are vested with the power to direct the sale of said land in such parcels as they shall deem for the best interests of the state, and that "all sales of state land shall be advertised. . . . . In all sales the land shall be offered in legal subdivisions of not

more than one hundred and sixty acres. . . . . That sales of
state lands shall only be made to citizens of the United States
and to those who shall have declared their intention to be-
come such. No land shall be sold for less than its appraised
value nor for less than ten dollars per acre.''

The foregoing sections of the statute were enacted for the
purpose of complying with and carrying out the provisions
of the constitution, and clearly and distinctly provide and
limit the power of the state land board, with reference to
the disposition of the lands granted to the state by the gen-
eral government, to the leasing and sale of state lands. In
the sale of state lands the statute provides for a public sale
and that no land shall be sold for less than its appraised value
nor for less than ten dollars per acre.

This court, in the case of *Balderston v. Brady,* 17 Ida. 567,
had under consideration the power and authority of the state
board of land commissioners in the disposition of the public
lands of the state, and held: ''It is obvious that if the con-
templated action of the board of land commissioners involves
the exercise of a judgment or discretion vested in them by
law, then this court cannot and will not attempt to control
that discretion or in any manner interfere with or direct the
action of the board. If, on the other hand, the action pro-
posed is without authority of law or has no legal sanction
or authority, or is an attempt to act, not upon the discretion
and judgment of the board, but upon a substituted judgment
or discretion, or upon the judgment, discretion and direction
of some other board or body, then in such cases this court
may interrupt them and declare the law on the subject, and
point out to them the legal scope within which their judg-
ment and discretion must be exercised.''

So in the case at bar, if the state board of land commis-
sioners, in accepting the application of the appellant to pur-
chase said land and the making of the conveyance by the
state to such applicant of the land described in the applica-
tion, was acting within the discretion conferred upon such
board under the laws of the state, this court will not in any
way interfere with or annul such action; but, if the accepting

of such application and the making of such conveyance are prohibited by the constitution and the statutes of the state, it is the duty of this court, when such action is called in question, to uphold and sustain the provisions of the constitution and the laws, even though in so doing the actions of the board are annulled and set aside.

Guided by this rule as to the power and authority of the state board of land commissioners, it is apparent that the state board of land commissioners was not acting within the discretion conferred upon the board by the laws of the state. In suggesting to the appellant that he apply for the purchase of the land for reservoir purposes, as provided for in Senate Bill No. 108, Sess. Laws 1907, p. 527, and in pursuance of such application issuing a deed conveying to the appellant a right of way over and across certain land for reservoir purposes, to have and to hold all and singular the within described premises for the purpose of constructing and maintaining a reservoir thereon, together with the appurtenances to the said Carter McVine Tobey and his assigns *forever,* an agreement and contract between the appellant and the state board of land commissioners was made which cannot be construed as a lease of state land, neither is it the purchase of state land at public auction, under the provisions of the constitution and the laws of the state, but is wholly without authority of law or legal sanction or authority and violates specifically the inhibition as to the authority of the land board contained in the constitution and the statutes.

Senate Bill No. 108, Sess. Laws 1907, p. 527, referred to by the state board of land commissioners with reference to the appellant's applying for and purchasing a right of way or reservoir site, is also embraced within the provisions of sec. 1635, which provides: "Any person or persons desiring to construct over or upon any of the lands owned or controlled by the state of Idaho, any ditch, canal, reservoir or other works for carrying or distributing public waters for any beneficial use, may make application to the state board of land commissioners for said right of way." Then follow the acts to be done preparatory to and in the making of such appli-

cation; and the statute then provides that the state board
of land commissioners may grant land for such right of way
upon the payment of such compensation therefor as may be
deemed reasonable, not less than ten dollars per acre, and
upon such terms and conditions as they may deem best; that
such works must be completed within five years and must be
commenced within one year.

Sec. 1636 provides: ''When it shall appear upon an investi-
gation by the state board of land commissioners that certain
lands belonging to the state are more valuable for reservoir
purposes than for any other purpose, the said board may
withhold such lands from sale, and such land shall be re-
served by the state for storage purposes as a means of re-
claiming other state lands in the vicinity. If, upon investi-
gation, it is ascertained that certain state lands are more val-
uable for reservoir purposes than for any other purpose, and
can be used as a means of reclaiming other lands in that
vicinity, the said board may withhold the same from sale
until such time as it is advisable to sell the same, and may
sell such lands as a whole for the purpose of a reservoir site,
and upon such terms and conditions as they may deem ad-
visable; but no such lands shall be sold for less than ten dollars
per acre''; etc.

While these two sections clearly authorize the state board
of land commissioners to dispose of reservoir sites and rights
of way for ditches, canals and reservoirs, it is also provided
that such disposition shall be by sale, and that the price must
be ten dollars per acre. The sale mentioned herein is a sale
under the laws of the state of Idaho, and must be conducted
within the limits of the constitution and laws, and can only
be made upon agreement of the parties or by condemnation
proceedings, and cannot then be made unless such state land
is sold for not less than ten dollars per acre. These sections in
no way confer upon the state land board any power that is pro-
hibited by the constitution, and it was not the intention of
the legislature in enacting said sections to in any way con-
travene the constitutional inhibition, but it was intended to
carry out the provisions found in sec. 14 of art. 1 of the con-

stitution, known as the declaration of rights, and also sec. 1637, Rev. Codes. The section of the constitution referred to is as follows:

"The necessary use of lands for the construction of reservoirs or storage basins, for the purpose of irrigation, or for the rights of way for the construction of canals, ditches, flumes or pipes to convey water to the place of use, for any useful or beneficial or necessary purpose, or for drainage; or for the drainage of mines, or the working thereof, by means of roads, railroads, tramways, cuts, tunnels, shafts, hoisting works, dumps, or other necessary means to their complete development, or any other use necessary to the complete development of the material resources of the state or for the preservation of the health of its inhabitants is hereby declared to be a public use, and *subject to the regulation and control of the state. . . . .* "

Sec. 1637, Rev. Codes, is as follows:

"The state board of land commissioners is hereby empowered to grant, over and upon any land owned or controlled by the state of Idaho, rights of way for railroad, telegraph, telephone and electric lines, also rights of way for highway purposes, and rights of way for any other public or private purpose or beneficial use. Application for such right of way must be accompanied by a map, in duplicate, showing the course of such right of way over each smallest legal subdivision of land, and the amount of land required for said right of way. The said right of way may be granted by the state board of land commissioners upon such terms and upon such compensation being paid therefor as the said board may determine: Provided, That no land shall be sold under the provisions of this section for less than ten dollars per acre. Upon the said right of way being granted, it shall be the duty of the register of the state land board to enter the same upon the plats of the state lands on file in his office: Provided, further, that if the lands so granted are not used for the purpose specified in the application for right of way, within five years from the granting of such right of way, then in such event the said lands so granted shall revert to the state; or

if the tracks or works upon such lands for which such right of way has been granted are not completed within five years after such right of way has been granted, the state land board shall have the right to declare such rights of way forfeited."

In the case of *Portneuf Irr. Co. v. Budge,* 16 Ida. 116, 100 Pac. 1046, this court, in discussing the method of determining the compensation for the taking of private property for a public use, said: "It must be remembered that the constitution of this state authorizes the taking of private property for public use upon payment of a just compensation 'to be ascertained in a manner prescribed by law.' As we view it, the only question to be determined under this constitutional provision is this: Does section 5226 prescribe a manner for determining the 'just compensation' to be paid for plaintiff's property? . . . . It rather says that compensation shall be determined 'in a manner prescribed by law.' The legislature has prescribed a method for establishing the just compensation to be allowed." The constitutional provision referred to in that case is sec. 14, art. 1 of the constitution. The foregoing case is approved in *Pyle v. Woods,* 18 Ida. 674, 111 Pac. 746.

It is clear, we think, that secs. 1635 and 1646 were not intended to provide for a method or system of disposing of land belonging to the state which will have the effect of granting the right to the use or occupancy forever, or the right to enter upon state land or occupy it for the purpose of use as a reservoir or in appropriating water thereon, except that such right and use and occupancy is obtained under the provisions of the constitution and the statutory laws of the state.

In the case of *Pike v. State Board of Land Commissioners,* 19 Ida. 268, 113 Pac. 447, this court very fully considered and determined the power and authority of the state board of land commissioners in disposing of state lands, and the rule is clearly announced that "both the constitution and statute authorize the board to lease and sell state lands," and attention is called to the fact it has been the universal policy of the state land board of this state to lease and sell state

lands, and that the public policy of the state in carrying out the provisions of the constitution and statute in leasing and selling the lands of the state is entirely within the discretion of the state board of land commissioners, within the limitations provided by the constitution and the statute.

It is argued, however, that if the power of the state board of land commissioners is limited by the constitution and the statute to the disposition of state lands by lease and sale only, it will annul the action of the state land board in many transactions that have been made in the state in relation to the granting of easements for ditches and also the disposal of state lands for reservoir and power sites and other public works, and likewise, if such rule is invoked in the future, it will retard and prevent the development of many industries in this state and the construction of works and improvements which contribute to the development and improvement of the lands, not only of the state, but likewise the lands that may be settled upon or improved under the laws of the United States. This contention, it will be observed, is based wholly upon a general policy heretofore adopted and followed by the state land board, and which may be continued likewise by the board in the future. As announced by this court in the case of *Pike v. State Land Board, supra,* ''As a matter of policy and business expediency this argument might appeal to the board, but it cannot be considered by this court.'' This language was in answer to the same character of argument presented in the above case. The question of policy and business expediency which may have been pursued by the state board in the past, and which might be pursued in the future, should not control or guide this court in upholding and sustaining a policy, where such policy is absolutely prohibited by the provisions of the constitution and the laws of this state. The constitution and the laws of the state should at all times be followed and upheld and sustained by the courts, and should not be ignored by public officers in the administration of public affairs of the state.

In this connection our attention is called to sec. 3302 of the Rev. Codes, which provides: ''The right of way over and

upon any and all lands owned and controlled by the state of Idaho is hereby granted to any and all persons for the purpose of constructing and maintaining any ditch, canal, conduit or other works for the diversion or carrying of water for any beneficial use: Provided, that no property shall be taken under the provisions of this section until a just compensation shall be paid therefor, to be ascertained in the manner prescribed by law for the taking of private property for a public use.''

This section of the code clearly grants a right of way upon lands owned or controlled by the state to all persons for the purpose of constructing and maintaining any ditches, canals, conduits or other works for the diversion or carrying of water for any beneficial use, and the method or manner by which the right of way over and upon any state land is passed, is a matter regulated by law, but this, however, does not apply until after just compensation shall be paid therefor, to be ascertained in the manner prescribed by law for the taking of private property for a public use. The manner of ascertaining what is a just compensation for the taking of private property for a public use is prescribed by statute, and that method is by contract made between the owner of such property and the person or corporation seeking to take such property for a public use, or by condemnation proceedings under the laws of the state; and the grant for a right of way is not completed, and neither does the title pass to the person seeking the public use of such land until compensation is paid, and such compensation is determined in the manner provided by law.

Sec. 5212, Rev. Codes, specifically provides: ''The private property which may be taken under this title includes . . . . 2. Lands belonging to this state . . . . not appropriated to some public use.'' This statute and sec. 3302, taken together, show clearly the intent of the legislature to grant the right to take state land for a public use, just the same as private property. This doctrine was considered and this rule announced in the case of *Hollister v. State,* 9 Ida. 8, 71 Pac. 541.

For the reasons stated in this opinion we hold: First, that the right, whatever it is, acquired by Mary Bridgewood under the permit issued to her to appropriate water at a point on state land, is prior in time and superior in right to the right acquired by the plaintiff's deed of October 12, 1909; second, that the plaintiff acquired no right, title or interest in the property in controversy by reason of his application to purchase the land in controversy, made and completed on the 30th day of October, 1909, and the deed executed to the appellant in compliance with such application and dated the 12th day of October, 1909; third, that the restraining order issued by the trial court on the 4th day of October, 1909, was improperly issued, and that the same was properly dissolved; that the judgment should be modified accordingly, and a judgment entered in favor of the respondent that said action be dismissed and the plaintiff take nothing by this action, and a judgment is directed to be entered by the trial judge accordingly; that the respondent recover the costs and disbursements incurred in this action.

Ailshie and Sullivan, JJ., concur.