(May 28, 1921.)

THE EAST SIDE BLAINE COUNTY LIVESTOCK AS-SOCIATION, a Corporation, Respondent, v. THE STATE BOARD OF LAND COMMISSIONERS OF THE STATE OF IDAHO et al., Respondents, and STEWART CAMPBELL and CAMPBELL BROTH-ERS, Intervenors and Appellants.

[198 Pac. 760.]

MANDAMUS—WHEN WRIT WILL LIE AGAINST STATE BOARD OF LAND COMMISSIONERS — HOW POWERS OF BOARD EXERCISED — STATE LANDS—HOW LEASED.

1. Where two or more parties have applied to lease the same state land, a writ of mandate will lie against the state board of land commissioners to compel it to lease such lands to the highest bidder.

2. The direction, control and disposition of the public lands of the state is by art. 9, secs. 7 and 8 of the constitution vested in the state board of land commissioners, and must be exercised in accordance with the constitution and statutes thereunder, and not otherwise.

3. If the board acts without authority of law, the courts may interrupt its action and declare the law. and point out the legal scope within which the board's judgment must be exercised.

4. Where two or more parties apply to the board to lease the same state lands, under either C. S., sec. 2907 or 2910, the lease must be awarded to the party making the highest bid.

APPEAL from the District Court of the Third Judicial District, for Ada County. Hon. Charles F. Reddoch, Judge.

Application for writ of mandate. Writ granted and intervenors Campbell appeal. *Affirmed.*

Oppenheim & Lampert and Jay M. Parrish, for Appellants.

Intervenors have a vested interest in the lands in question and their interest cannot be taken away from them by such an action as this—they have made their application, paid their rental for the lands in question and the state has accepted such payment. (*Baty v. Sale*, 43 Ill. 351, 92 Am. Dec. 128; *Clements v. Warner*, 24 How. 394, 16 L. ed. 695; *Gough v. Dorsey*, 27 Wis. 119; *Shepley v. Cowan*, 91 U. S. 330, 23 L. ed. 424.)

If the defendants have any discretion in the matter the writ cannot issue. (*United States v. Lamount*, 155 U. S. 303, 15 Sup. Ct. 97, 39 L. ed. 160; 18 R. C. L. 125; *American Casualty etc. Co. v Fyler*, 60 Conn. 448, 25 Am. St. 337, 22 Atl. 494.)

Courts will not permit the use of a writ of mandate against public officials except to compel the performance of acts which are specifically enjoined upon said officer by statute. (*City of Guthrie v. Stewart*, 45 Okl. 603, 146 Pac. 585; *Kyrimes v. Kyrimes*, 45 Utah, 168, 143 Pac. 232; *State v. Commissioners of Sanders County*, 49 Mont. 517, 143 Pac. 984.)

"The writ of *mandamus* will only issue in case of necessity to prevent injustice or great injury and if there is doubt of its necessity or propriety it will not be issued." (*State v. Hare*, 78 Or. 540, 153 Pac. 790; 26 Cyc. 146; *People v. Palmer*, 27 Misc. Rep. 569, 59 N. Y. Supp. 62.)

Hays, Martin, Cameron & Hays, for Respondent.

It is the duty of the land board to provide for the rental of lands "under such regulations as may be prescribed by law." (Sec. 8, art. 9, Const.) The discretion of the land board is limited, and they must handle the state lands "under such regulations as may be prescribed by law." (*Pike v. State Board of Land Commrs.*, 19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447; *Tobey v. Bridgewood,* 22 Ida. 566, 127 Pac. 178; *Pierson v. Loveland,* 16 Ida. 635, 102 Pac. 340.)

Roy L. Black, Atty. Genl., and Dean Driscoll, First Asst., for Respondent Board.

LEE, J.—This action was commenced·in the third judicial district court by the respondent corporation, praying that a writ of mandate issue to the state board of land commissioners, commanding it immediately to put up at public auction section 36, township · 2 north, range 20 east, Boise Meridian, for lease to the highest bidder. The court issued an alternative writ, commanding the defendants to immediately auction off the lease of said lands to the applicant who would pay the highest annual rental therefor, and that in default thereof defendants show cause before said court why said order had not been obeyed. Defendants demurred to said complaint, and thereafter Stewart ` Campbell and Campbell Brothers were permitted to intervene and file a . complaint in intervention, alleging that said state board of land commissioners had already leased said land to them. A general demurrer to the complaint in intervention was overruled, and respondent answered the same. Defendants answered the respondent's complaint, and set up that the lands in question had been leased to Stewart Campbell for the reason that he owned lands adjoining and that he was in the military service of the United States. All of the demurrers having been overruled, a trial on the issues presented by the pleadings was had before the court, and it

entered judgment directing that a peremptory writ of mandate issue, commanding said defendants, after giving proper notice to the applicants who had made applications to lease said lands, to immediately auction off at public auction said land lease to the applicant who would pay the highest rental therefor. From this judgment the intervenors appeal, and assign as error (1) that the court erred in overruling the intervenors' demurrer to the complaint, (2) in entering judgment directing the defendants to auction said lands, (3) in issuing a peremptory writ of mandate directing the state board of land commissioners to order a public auction of the lease of said lands, (4) overruling intervenors' objection to the introduction of any testimony on behalf of the plaintiff.

It appears that the plaintiff and its predecessors in interest had leased the lands in question for a period of ten years immediately preceding December 30, 1918, and that prior to the expiration of this lease it made written request, in compliance with law and the rules and regulations of said board, for an additional five-year lease upon said lands; that shortly prior thereto appellants made application in due form to lease the same lands; that on December 17th, 1918, the state land commissioner notified respondent that said board had received its application for leasing said lands, together with the proper rental fees, and also the application of the intervenor Campbell; and that if these conflicting applications could not be adjusted by the parties, the lease would be offered at public auction to the highest bidder; and that if any prior right existed, it must be established previous to such auction; and that on such claim being established, the commissioner would eliminate such land from conflict, and lease to the applicant establishing such right, as provided by the rules and regulations of said state board. For the purpose of "holding such auction and receiving such adjustment," respondent was notified to appear in person, or by agent, on December 30, 1918, before the said commissioner at his office at Boise. At that time

respondent appeared, by its agent, and demanded a right to bid at auction on the lease of said premises, under its said application, and said that it was ready and willing to bid above ten cents per acre; but the commissioner refused to put up said lease at auction, and ruled the same should go to the intervenors Stewart Campbell and Campbell Brothers, who appear to represent one and the same interest, at a rental of ten cents per acre. Respondent immediately took the matter before the board, which was then in session, making the same demand and offer, but the board also refused to lease the land to respondent, or to offer the same at auction, and ordered that it be leased to appellants for ten cents per acre. The defendant board's answer sets up as a reason for awarding the lease of these premises to the appellant Campbell that he was the owner of farm lands adjoining said section and that the respondent was not such owner, and that at the time of the making of this lease said Campbell was in the military service of the United States, and admits that no auction for the lease of said land was ever held and no sealed bids received, and no opportunity for making the same given, except in so far as the original application to lease constituted a bid.

The commissioner testified that he was present at said meeting of the board when these lands were leased to the appellant, and stated to the board that two applications had been filed during the month of November for the same land; that he had sent out notices to the conflicting applicants to appear before him on that date, and that they did appear before him, but had been unable to adjust their said conflict; and that he recommended that the lease be granted to Campbell Brothers. It appears from the minutes of the meeting of the board that upon the commissioner making this report, upon motion of the Governor, which was carried unanimously, the action of the commissioner was ratified, it being recited in the minutes as one of the reasons therefor that said Stewart Campbell was in the military service of the United States. The Board ordered the execution of a

lease to Campbell Brothers, at ten cents per acre, which was prepared, but has not been delivered. During all of these proceedings before the board respondent was present by its agent, demanding that said lease be offered at auction to the highest bidder, and offered to bid more than ten cents per acre for said lands.

The material facts are not controverted; this appeal presents the question as to whether or not under these facts said state board may be required by mandate to offer the lease of said lands at public auction.

C. S., sec. 2907, provides that no lease of state lands shall be for a longer term than five years, and that at the expiration of a lease by limitation, the holder may renew the same at any time within thirty days next preceding the expiration of such lease; in case two or more persons apply to lease the same land, the commissioner shall notify all the applicants, requesting them to forward sealed bids for the same, accompanied by a certified check for the full amount, which bids must be in the commissioner's office by January 31st following the expiration; and that the lease shall be given *to the party making the highest bid.* In case of a renewal, the commissioner must notify the original lessee, advising him of the amount of the highest bid, and such former lessee and the party making the highest bid shall then have the right to make a new bid, and the party making the *highest bid* shall be awarded the lease.

C. S., sec. 2910, provides that where two or more persons apply to lease the same land, the commissioner shall at a stated time auction off a lease of said land to the applicant who will pay the *highest annual rental therefor.*

Art. 9, sec. .7, of the constitution provides that the Governor, Superintendent of Public Instruction, Secretary of State, Attorney General and State Auditor shall constitute the state board of land commissioners, and shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law.

Art. 9, sec. 8, makes it the duty of the state board of land commissioners to provide for the location, sale or rental of all lands heretofore, or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such a manner as will secure the maximum possible amount therefor, and that the general grants of land made by Congress to the state shall be judiciously located and carefully preserved, and held in trust, subject to disposal at public auction.

This court has frequently held that the state board of land commissioners is vested, under the provisions of art. 9, secs. 7 and 8, of the constitution, with the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law. Such direction, control and disposition must be in accordance with the constitution and statutes of the state, and not otherwise. (*Balderston v. Brady,* 17 Ida. 567, 107 Pac. 493.)

In this case the court further says: "It is obvious that if the contemplated action of the board of land commissioners involves the exercise of a judgment or discretion vested in them by law, then this court cannot, and will not, attempt to control that discretion or in any manner interfere with or direct the action of the board. If, on the other hand, the action proposed is without authority of law or has no legal sanction or authority . . . . then and in such cases this court may interrupt them and declare the law on the subject, and point out to them the legal scope within which their judgment and discretion must be exercised."

In *Pike v. State Board of Land Commrs.,* 19 Ida. 268, Ann. Cas. 1912B, 1344, 113 Pac. 447, this court held that while the state board of land commissioners are trustees or business managers for the state in handling its public lands, and in matters of policy, expediency and the business interests of the state they are the sole and exclusive judges, so long as they do not run counter to the provisions of the constitution and statutes.

In *Tobey v. Bridgewood*, 22 Ida. 566, 127 Pac. 178, it was said that ''Under the constitution and statutes of this state . . . . the state board of land commissioners have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law.''

Appellants' counsel earnestly contend that the complaint does not show that the respondent has complied with the statutory requirements for the renewal of leases; that it is fundamental that a writ of mandate can be invoked only when a great wrong or injury will result by refusal of the officers to act; that no showing is made by respondent's complaint that it will be deprived of anything of value, or that any injury will be done it, or any vested right which it has will be injured or destroyed. We have endeavored to examine with care the numerous authorities cited, and they support the general principles of law announced; but we do not think they are applicable to the conditions of this case, for the reason that the writ prayed for in this case asks that the board be required to perform a public duty, which is clearly enjoined upon it by law, the performance of which is in the interest of public good, to the end that the state shall receive the greatest possible amount of revenue for the lease of its school lands, a benefit which inures to all alike. Although the respondent may have asked for this writ because it believed that it would be especially benefited thereby, entirely aside from this consideration the public welfare to be subserved is a sufficient reason for granting this writ to compel obedience to a plain provision of the law, which requires these lands to be leased at public auction to the highest bidder therefor.

The dominant purpose of these provisions of the constitution and of the statutes enacted thereunder is that the state shall receive the greatest possible amount for the lease of school lands for the benefit of school funds, and for this reason competitive bidding is made mandatory. C. S., sec. 7284, provides that a writ of mandate may issue to any inferior tribunal, corporation, board or person, to compel the

performance of an act which the law enjoins as a duty resulting from an office, trust or station. The provisions of the constitution and statutes above referred to made it the duty of the state board of land commissioners, under the facts and circumstances of this case, to offer the lease of said lands at auction to the highest bidder, and the board, in refusing to do so, failed in the performance of an act which the law enjoins as a duty resulting from its official position. In refusing to do so, its action ran counter to the provisions of the constitution and statutes.

The judgment of the district court awarding the respondent a writ of mandate to compel the state board of land commissioners to offer the lease of said lands to the highest bidder is affirmed, with costs to the respondent.

Rice, C. J., and McCarthy and Dunn, JJ., concur.

Budge, J., did not sit at the hearing and took no part in the decision.