BURDICK, J.
dissenting.
The facts in this case are not in dispute. The record clearly demonstrates that the Land Board is exceeding its discretion in leasing the cottage sites for less than market value and failing to obtain the maximum long-term financial return for the beneficiaries, which is a violation of both I.C. § 58-310A and the Idaho Constitution. The majority does not deny this, instead finding that the Attorney General has other plain, speedy and adequate remedies available.
A. There is no other plain, speedy and adequate remedy available in the ordinary course of law.
It should be noted that the requirement that no other “plain, speedy and adequate” remedy exist in the ordinary course of law is phrased in the conjunctive. See Henry v. Ysursa, 148 Idaho 913, 915, 231 P.3d 1010, 1012 (2008). That is to say, this prong is satisfied when there is no remedy in the course of law which satisfies all three criteria, being plain, speedy and adequate. To the extent the proposed cottage lease structure violates the Board’s constitutional and/or statutory mandates, a stay or injunction would only perpetuate that violation, not remedy it in an adequate manner, let alone a speedy one.
I wish to initially note the rather cavalier manner in which the majority assumes that: (1)a preliminary injunction may be obtained in this case; or (2) that the Attorney General may obtain a declaratory judgment.
Idaho Rule of Civil Procedure 65(e) allows for the granting of a preliminary injunction in the following cases:
(1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of the acts complained of, either for a limited period or perpetually-
(2) When it appears by the complaint or affidavit that the commission or continuance of some act during the litigation will produce waste, or great or irreparable injury to the plaintiff.
(3) When it appears during the litigation that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiffs rights, respecting the subject of the action, and tending to render the judgment ineffectual.
(4) When it appears, by affidavit, that the defendant during the pendency of the action, threatens, or is about to remove, or to dispose of the defendant’s property with intent to defraud the plaintiff, an injunction order may be granted to restrain the removal or disposition.
(5) A preliminary injunction may also be granted on the motion of the defendant upon filing a counterclaim, praying for affirmative relief upon any of the grounds mentioned above in this section, subject to the same rules and provisions provided for the issuance of injunctions on behalf of the plaintiff.
(6) The district courts, in addition to the powers already possessed, shall have power to issue writs of injunction for affirma *555 tive relief having the force and effect of a writ of restitution, restoring any person or persons to the possession of any real property from the actual possession of which the person or persons may be ousted by force, or violence, or fraud, or stealth, or any combination thereof, or from which the person or persons are kept out of possession by threats whenever such possession was taken from them by entry of the adverse party on Sunday or a legal holiday, or in the nighttime, or while the party in possession was temporarily absent therefrom. The granting of such writ shall extend only to the right of possession under the facts of the ease, in respect to the manner in which the possession was obtained, leaving the parties to their legal rights on all other questions the same as though no such writ had issued: provided, that no such writ shall issue except upon notice in writing to the adverse party of at least five (5) days of the time and place of making application therefore.
Here, a preliminary injunction may not be entered under I.R.C.P. 65(e)(2), as it is obvious that there is no injury to Attorney General Wasden in this case. An injunction is also unavailable under I.R.C.P. 65(e)(3) as there has been no allegation that the Board’s actions violated Wasden’s rights. Likewise, I.R.C.P. 65(e)(4) & (6) are clearly unavailable as no property has been removed or taken from any party. Finally, I.R.C.P. 65(e)(5) pertains to counterclaims and is clearly inapplicable here. Therefore, the only possible basis upon which Wasden could obtain a preliminary injunction is I.R.C.P. 65(e)(1), and it is far from certain that Wasden would be entitled to relief under that section.
In the event that a preliminary injunction is not entered, the unconstitutional actions of the Land Board will continue until a declaratory judgment finally works its way through the court system, much like the school funding case, which took fifteen years. See State v. Dist. Court, 143 Idaho 695, 152 P.3d 566 (2007). Speediness aside, it is unclear that the Attorney General even has standing to obtain a declaratory judgment.
Idaho Code § 10-1202 states:
Any person interested under a deed, will, written contract or other writings constituting a contract or any oral contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or under legal relations thereunder.
It is obvious that the Attorney General is not a person interested under a deed, will, written contract or other writing constituting a contract, or an oral contract, so the first basis for relief under the declaratory judgment act is unavailable. It is likewise clear that the Attorney General’s “rights, status or other legal relations” are not being affected, therefore the second basis for relief is unavailable. See also Sunshine Mining Co. v. Carver, 34 F.Supp. 274 (D.Idaho 1940); Selkirk-Priest Basin Ass’n v. State ex rel. Andrus, 127 Idaho 239, 899 P.2d 949 (1995).
Presuming that the Attorney General had standing to initiate a declaratory judgment action, the first thing that would occur in this “speedy” remedy proceeding is that all of the parties who filed intervening briefing in this matter would request to join as parties to the action. This could potentially include each and every lessee of the cottage sites. Each lessee would have to be given a chance to present their side of the case, and voluminous discovery would undoubtedly result.
The majority cites to the Court of Appeals decision in Agricultural Services, Inc. v. City of Gooding, 120 Idaho 627, 818 P.2d 331 (Ct.App.1991), in attempting to eliminate this Court’s constitutionally provided power to issue wilts of prohibition. The legislature, in enacting the Declaratory Judgment Act, did not intend to replace the writ of prohibition as an avenue of relief, but following the logic of the majority here that is essentially what would result.
B. The Board is acting in excess of its jurisdiction in attempting to implement leases that will not achieve market rent, in contravention of I.C. § 58-310A, as applied by the Idaho Constitution.
Wasden argues that by adopting the cottage site lease terns at issue the Board is *556 acting in excess of its jurisdiction under both Article IX, section 8, of the Idaho Constitution and I.C. § 58-310A. The Board responds that it is granted broad discretion under the Idaho Constitution to manage the endowment property in a manner designed to achieve maximum long-term financial returns to the Beneficiaries.
This Court addressed the issue of jurisdiction, as it applies to the scope of the Board’s action — in the context of a petition for a writ of prohibition — in the case of Balderston v. Brady, 17 Idaho 567, 107 P. 493 (1910). In Balderston, the Board was attempting to give some of the endowment lands away to private citizens (settlers) for free. Id. In discussing whether the Board was acting outside of its jurisdiction, the Balderston Court wrote:
In many of the matters coming before the board in reference to state lands they must exercise their judgment and discretion, and it is a well-settled principle of law that in such eases the courts will not attempt to control or supervise the discretion vested in the officers of a co-ordinate branch of the government____ The finding of the board on the facts of any matter of inquiry is final and conclusive ... but an error made in applying the law to the facts, or an erroneous construction of the law by the Land Department, may be reviewed and corrected by the courts. In Pierson v. [State Board of Land Commissioners, 14 Idaho 159, 93 P. 775 (1908),] this court said: “If they [the Board] act in a matter without jurisdiction, there is a remedy; if they misapply the law to the fact found, or in case of fraud, there is a remedy.”
It is obvious that if the contemplated action of the Board of Land Commissioners involves the exercise of a judgment or discretion vested in them by law, then this court cannot and will not attempt to control that discretion, or in any manner interfere with or direct the action of the board. If, on the other hand, the action proposed is without authority of law, or has no legal sanction or authority, or is an attempt to act, not upon the discretion and judgment of the board, but upon a substituted judgment or discretion, or upon the judgment, discretion, and direction of some other board or body, then and in such cases this court may interrupt them and declare the law on the subject, and point out to them the legal scope within which their judgment and discretion must be exercised.
Id. at 575, 107 P. at 495 (emphases added) (second alteration in the original). In Balderston, the legislature, at the urging of the governor, passed a joint resolution directing the Board to relinquish title to certain state lands to private citizens. Id. at 577,107 P. at 495-96. This Court issued the requested writ of prohibition, finding that the joint resolution was not a law of the state and therefore could not be relied upon by the Board as authority. Id. at 579-80, 107 P. at 496.
One year after Balderston, this Court was again asked to issue a writ of prohibition against the Board in Pike v. State Board of Land Commissioners, 19 Idaho 268, 113 P. 447 (1911). In Pike, the Board proposed to sell almost 24,000 acres of state lands to the Potlach Lumber Company, the highest bidder at public auction, at the appraised value for that land. Id. at 272-75, 113 P. at 450. The appellant offered many reasons why this Court should issue a writ of prohibition preventing the proposed sale, including his belief that auctioning off land that is currently subject to a long-term lease (Potlach Lumber Company had a 20-year lease to remove the timber from the property, 11 years of which remained at the time of the proposed sale) can never bring the State the “maximum possible amount”[9] for lands sold. Id. at 287, 113 P. at 453-54. The Pike Court declined to issue a writ of prohibition, finding that “[i]t is self-evident ... that the lands can be sold at public auction for the ‘maximum possible amount’ which such lands will bring at that time and under conditions then existing.” Id. at 287, 113 P. at 454. This Court *557 noted that it is a doubtful or questionable business policy to offer lands for public auction under such circumstances, but that the decision to do so was “purely a matter of policy to be determined by the State Board of Land Commissioners, and if they act unwisely they must account to the electors of the state, but their judgment and discretion in such matters cannot be controlled by the courts.” Id. The Court also noted that:
the Constitution vests the control, management and disposition of state lands in the State Board of Land Commissioners. Section [VIII], art. 9. They are, as it were, the trustees or business managers for the state in handling these lands, and on matters of policy, expediency and the business interest of the state, they are the sole and exclusive judges so long as they do not run counter to the provisions of the Constitution or statute.
Id. at 286, 113 P. at 453 (emphasis added).
In Idaho Watersheds Project, Inc. v. State Board of Land Commissioners, a conflict auction took place for one of the state endowment lands, pursuant to I.C. § 58-310, as the then-current lessee and the Idaho Watersheds Project (IWP) both applied to lease the land. 128 Idaho 761, 918 P.2d 1206 (1996). At the conflict auction IWP placed the only bid; the Board nevertheless awarded the lease to the then-current lessee. Id. IWP appealed to this Court, arguing that the Board exceeded its authority in granting the lease to a non-bidding party after the conflict auction had been held. Id. This Court noted that although the Board had general discretion to choose the bid that, in its judgment would “secure the maximum long term financial return”, it could not award the lease to a party that had failed to participate in the I.C. § 58-310 auction at all. Id. at 766, 918 P.2d at 1211. This Court reemphasized that “the constitution and laws of the state should at all times be followed and upheld and sustained by the courts, and should not be ignored by public officers in the administration of public affairs of the state.” Id. (quoting Tobey v. Bridgewood, 22 Idaho 566, 584, 127 P. 178, 184-85 (1912), overruled on other grounds by Idaho-Iowa Lateral & Reservoir Co. v. Fisher, 27 Idaho 695, 151 P. 998 (1915)).
In Henry v. Ysursa, this Court noted that: [t]he word “jurisdiction” when used in reference to a writ of prohibition includes powers or authority conferred by law. Crooks v. Maynard, 112 Idaho 312, 319, 732 P.2d 281, 288 (1987) (where administrative orders were within the “power and authority” of the administrative district judge, a writ of prohibition would not issue); Stein v. Morrison, 9 Idaho 426, 455, 75 P. 246, 256 (1904) (quoting from Maurer v. Mitchell, 53 Cal. 289, 292 (1878)) (“The word ‘jurisdiction,’ when used in connection with ‘prohibition,’ would be at once understood as being employed in the sense of the legal power or authority ‘to hear and determine causes.’ ”).
148 Idaho 913, 915, 231 P.3d 1010, 1012 (2008). The jurisdictional question at issue in Henry was whether the Secretary of State was acting beyond his jurisdictional authority in placing an independent candidate on the ballot where that candidate met the statutory requirements under I.C. § 34-708, and that statute directed that — where those requirements were met — “the [Secretary of State] shall” place the name of that candidate on the ballot. Id. Appellants in Henry argued that the candidate had acted improperly and unethically and was not actually in compliance with the requirements for being placed on the ballot. Id. at 913-16, 231 P.3d at 1011-12. Emphasizing that the word “shall” has repeatedly been construed by this court as of mandatory rather than discretionary intent, this Court found that the Secretary of State was not acting outside of his jurisdiction in placing that candidate on the ballot. Id. at 916-18, 231 P.3d at 1013-14.
It is true that the Board is granted broad discretion in Article IX, section 8, of the Idaho Constitution to manage the endowment properties in a manner it believes will bring the maximum long-term financial benefit to the Beneficiaries of the endowment trust. However, this discretion is not unrestrained. Article IX, section 8 of the Idaho Constitution directs that the Board must not only manage the public lands in such a manner as will secure the maximum long term *558 financial return, but also “under such regulations as may be prescribed by law.” As such, where the Board attempts to manage the endowment property in a manner that violates statutory law it is acting in excess of the discretion it is granted under the Idaho Constitution.
Idaho Code § 58-310A(3) specifically states that “[i]n the absence of the conflict application and auction procedure in the single family, recreational cottage site and homesite lease, and lease renewal process, the board shall insure that each leased lot generates market rent throughout the duration of the lease.” [10] The situation before us in the present action is analogous to that presented in Balderston v. Brady, where this Court found that the Board was acting in a manner outside of its jurisdictional authority. 17 Idaho 567, 107 P. 493 (1910). Here, I.C. § 58-310A directs the Board not to hold conflict auctions for the cottage sites, but rather to lease these properties at market rent. As was noted in Idaho Watersheds Project, “the constitution and laws of the state should at all times be followed and upheld and sustained by the courts, and should not be ignored by public officers in the administration of public affairs of the state.” 128 Idaho at 766, 918 P.2d at 1211 (quoting Tobey, 22 Idaho at 584, 127 P. at 184-85). Where the Board fails to ensure that the cottage sites generate market rent throughout the duration of the leases it cannot be said that Board has acted within its jurisdictional authority.
As noted above, where significant leasehold value accrues for the cottage sites those cottage sites are not being leased at market rent. See IDAPA 20.03.13.010.06. By including a premium rent provision in the cottage leases the Board is implicitly recognizing that it will not be achieving market rent. Beyond mere implicit recognition, however, the evidence offers explicit recognition of this concept by a majority of the Board. When discussing the Cottage Site Subcommittee’s proposal to the Board, on March 16, 2010, one Board member said, “Do we acknowledge that we’re not at market rent by using the term premium rent? Yes. We’ve done that since 1981.” Another member remarked, “I do disagree with your rental rate recommendation. Just — I don’t think that will bring us to a true market rent, as you said. And by continuing to collect the premium rent, we’re openly acknowledging that our rental rate is too low.” Attorney General Wasden has likewise made it clear than he believes the existence of premium rent demonstrates that the new cottage leases would not achieve market rent. Thus, three out of the five members of the Board have expressly stated that the existence of premium rent shows that the Board is failing to achieve market rent throughout the duration of the leases.
The five-year phase-in period that the Board proposes to implement with the new cottage leases also fails to comply with the Board’s statutory duty. Assuming the Board has determined, in its discretion, that market rent for the cottage sites is a return of 4% of the average value of the cottage sites over the previous 10 years, there is then no justification for failing to ensure that the cottage sites generate this market rent during the five-year phase-in. As noted above, I.C. § 58-310A requires the Board to generate market rent “throughout the duration of the lease”, not merely at certain points during the lease.
As it is clear from the record before this Court that the Land Board has acted in excess of its jurisdiction, and as there is no other plain, speedy and adequate remedy available at law I respectfully dissent.
Justice W. JONES concurs.

. At the time when Pike was issued Article IX, section 8 of the Idaho Constitution required the Board to manage the endowment lands in a manner that brought the "maximum possible amount therefor”. In 1982 this provision was amended to the current version, which requires the Board to "secure the maximum long-term financial return”. S.L.1982, p. 935.

. Although not argued by any party here, I.C. § 58-310A is clearly unconstitutional as — in eliminating the conflict auction procedure and instead requiring "market rent” — the legislature encroached upon the discretion constitutionally granted to the Land Board. Incidentally, it seems axiomatic that where the Land Board failed to obtain market rent, it was not obtaining the maximum long-term financial returns, as is mandated by the Idaho Constitution. However, until declared unconstitutional, I.C. § 58-310A must still be followed by the Land Board.