982 P.2d 367

**IDAHO WATERSHEDS PROJECT, an Idaho non-profit organization, Petitioner–Appellant,**

v.

**STATE BOARD OF LAND COMMISSIONERS, comprised of Phil Batt, Governor, Pete T. Cenarrusa, Secretary of State, Alan G. Lance, Attorney General, J.D. Williams, State Controller, and Anne C. Fox, Superintendent of Public Instruction, all in their official capacities; and Idaho Department Of Lands, an agency of the State of Idaho, Defendants–Respondents.**

No. 24367.

Supreme Court of Idaho,
Boise, December 1998 Term.

April 2, 1999.

Laurence J. (Laird) Lucas, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Stephanie A. Balzarini, Deputy Attorney General, Boise, for respondents. Stephanie A. Balzarini argued.

JOHNSON, Justice Pro Tem

This is a state endowment public land lease case. We conclude that section 58–310B of the Idaho Code (I.C.) violates Article IX, § 8 of the Idaho Constitution and remand the case to the State Board of Land Commissioners (the Board) to auction off and lease the land in question pursuant to I.C. § 58–310.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS

In 1996, the Idaho Watersheds Project (IWP) submitted twenty-four conflict grazing lease applications (the applications) to the Idaho Department of Lands (the Department) for expiring state endowment land leases (the leases). The Department recommended to the Board that IWP be deemed a "qualified applicant" for auction purposes pursuant to I.C. § 58–310B(4) on only six of the applications. In addition, IWP filed one application for a lease that had been canceled in 1996 prior to its expiration. The Department recommended to the Board that this lease be awarded to IWP as the only applicant, but later recommended that IWP be rejected as a bidder because IWP was not a

"qualified applicant." The Board decided IWP was a "qualified applicant" for three lease auctions. When these auctions were conducted, IWP was the highest bidder in two of them. The Department recommended that IWP be disqualified as the high bidder in those two auctions, and the Board approved this recommendation, citing land management considerations. Therefore, IWP received no lease awards out of its 1996 lease applications.

IWP filed suit against both the Board and the Department (collectively the State), seeking (1) a declaratory judgment that I.C. § 58–310B is unconstitutional on its face and as applied and (2) judicial review of the Board's actions under the Administrative Procedure Act (I.C. § 67–5201 through § 67–5292), alleging that the Board acted in an arbitrary and discriminatory manner in the handling of IWP's 1996 lease applications. The trial court ruled that I.C. § 58–310B is constitutional and upheld the actions of the State concerning the auctions and award of the leases. IWP appealed.

## II.

### I.C. § 58–310B VIOLATES ARTICLE IX, § 8.

IWP asserts that I.C. § 58–310B violates Article IX, § 8 of the Idaho Constitution. We agree.

■ The State contends that IWP does not have standing to maintain its declaratory judgment action challenging the constitutionality of I.C. § 58–310B. While one of the methods to test the constitutional validity of a statute is through a declaratory judgment action, the party seeking the declaration must have standing in order to bring the action. *Greer v. Lewiston Golf & Country Club, Inc.,* 81 Idaho 393, 395–96, 342 P.2d 719, 720–21 (1959). Whether a party has standing "focuses on the party seeking relief." *Miles v. Idaho Power Co.,* 116 Idaho 635, 641, 778 P.2d 757, 763 (1989). " 'Only those to whom a statute applies and who are adversely affected by it can draw in question its constitutional validity in a declaratory judgment proceeding.' " *Greer,* 81 Idaho at 395–96, 342 P.2d at 720 (quoting *Alabama*

*State Federation of Labor v. McAdory,* 325 U.S. 450, 463, 65 S.Ct. 1384, 1390, 89 L.Ed. 1725, 1736 (1945)).

■ After IWP submitted the applications, the Department sent out several letters requesting information based upon the criteria set forth in I.C. § 58–310B so as to enable the Board to determine if IWP was a "qualified applicant." On some of the applications, IWP was then deemed not to be a "qualified applicant" pursuant to the criteria contained within I.C. § 58–310B(4). On other applications, IWP was denied the award of a lease after a "public auction" pursuant to the factors listed in I.C. § 58–310B(6). Therefore, IWP was adversely affected by the process prescribed by I.C. § 58–310B.

■ Another aspect of standing is that it requires a "distinct and palpable" injury, not "one suffered alike by all citizens in the jurisdiction." *Selkirk–Priest Basin Ass'n v. State ex rel. Batt,* 128 Idaho 831, 833–34, 919 P.2d 1032, 1034–35 (1996). In the present case, the State took direct action against IWP in rejecting the applications for auction and in rejecting IWP's high bids following the auctions that were held. IWP was individually harmed by the criteria set out in I.C. § 58–310B and by the State's actions in applying that criteria to the applications. *See Boundary Backpackers v. Boundary County,* 128 Idaho 371, 375–76, 913 P.2d 1141, 1145–46 (1996) (confirming that an individualized injury resulting from the enforcement of an ordinance is sufficient to confer standing). IWP, as an applicant to become a lessor of state endowment public grazing lands, has a personal stake in the constitutionality of I.C. § 58–310B. Therefore, IWP has met its burden of "showing that a right or status, personal to [IWP], was endangered or threatened by the act." *Greer,* 81 Idaho at 396, 342 P.2d at 721.

■ Finally, for a party to have standing there must be a " 'fairly traceable' causal connection between the claimed injury and the challenged conduct." *Miles,* 116 Idaho at 641, 778 P.2d at 763 (citation omitted). As discussed above, the State utilized the criteria set forth in I.C. § 58–310B(4) and (6) to deny IWP "qualified applicant" status, and to

further deny IWP leases following auctions in which IWP was the highest bidder. Therefore, application of I.C. § 58–310B did result in the claimed injury to IWP.

Before addressing the merits of IWP's claims, we first note that in a companion case the Court has today concluded that the attempted amendment of Article IX, § 8 in the November 3, 1998 general election was ineffective. *Idaho Watersheds Project v. State Bd. Of Land Comm'rs*, 133 Idaho 55, 982 P.2d 358 (1999).

Article IX, § 8 directs that the Board provide *"rental* of all the lands heretofore, or which may hereafter be granted to or acquired by the state by or from the general government, *under such regulations as may be prescribed by law.* . . ." (emphasis added). Therefore, we must determine whether I.C. § 58–310B is constitutional as a "regulation . . . prescribed by law."

Article IX, § 8 provides that the objective of sales and leases of state endowment lands is to "secure the maximum long term financial return to the institution to which granted or to the state if not specifically granted." This is in keeping with the Idaho Admission Bill admitting Idaho into the union, which indicates that monies received from the sale or lease of school endowment lands "shall be reserved for school purposes only." Idaho Admission Bill, 26 Stat. L. 215, ch. 656, § 5(a).

Prior to the enactment of I.C. § 58–310B, hearings in the Senate Resources and Environment Committee (the committee) disclosed that the Idaho livestock industry contributes somewhere between $1.2 and $3.8 billion to the economy of Idaho, as compared to only $78,000 earned from conflict bids for public grazing lands. Aside from the strict financial gain to the state, supporters of I.C. § 58–310B urged the committee to consider several other factors, all financially related, including the stability of the livestock industry, the effect on the overall economy of ranchers going out of business, jobs and additional tax funds generated by the livestock industry, and the effect on those who supply the livestock industry. As a result of those factors, the proponents argued that if the livestock industry were weakened, the mo-

nies to be obtained from bidding auctions would also be weakened since there would be fewer participants in the livestock industry to place bids in the first place.

During a December 1996 hearing before the Board, the Board indicated that it needed to consider sales, income, and property taxes from the businesses conducted on the leased lands in determining the "maximum long term financial return." The Board also stated that in the previous year, $22.4 million had been earned from rents on school endowment lands, which monies were funneled directly to the schools of Idaho, while an additional $800 million had been collected in various taxes that benefit the state as a whole. The factors considered by the Board in this case mirror the factors presented to the Senate and discussed prior to the enactment of I.C. § 58–310B.

Rather than seeking to provide income to the schools *and* the state in general, Article IX, § 8 requires that the State consider only the "maximum long term financial return" to the schools in the leasing of school endowment public grazing lands. Article IX, § 8 requires the Legislature to "provide by law that the general grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction *for the use and benefit of the respective object for which said grants of land were made* . . . ." (emphasis added). By attempting to promote funding for the schools *and* the state through the leasing of school endowment lands, I.C. § 58–310B violates the requirements of Article IX, § 8. By the Board's application of the considerations contained in I.C. § 58–310B, IWP was denied the opportunity to participate in auctions for the leases for which it had applied.

We acknowledge that "[t]he Board is granted broad discretion in determining what constitutes the maximum long term financial return for the schools." *Idaho Watersheds Project v. Board of Land Comm'rs*, 128 Idaho 761, 765, 918 P.2d 1206, 1210 (1996) (*IWP I* ). Section 58–310B removes much of the Board's broad discretion, however, by impermissibly directing the Board to focus on the

schools, the state, and the Idaho livestock industry in assessing lease applications, all to the detriment of other potential bidders like IWP, which might provide "maximum long term financial return" to the schools, but not to the state and the Idaho livestock industry.

Having declared I.C. § 58–310B to be unconstitutional, it necessarily follows that the 1996 leases the Board awarded for which IWP was an applicant but was not allowed to bid at an auction were improperly awarded and must be opened for applications again. We note that I.C. § 58–310 provides a procedure for auctioning off and leasing public land "[w]hen two (2) or more persons apply to lease the same land," with the exception of leases for single family, recreation cottage sites and home sites pursuant to I.C. § 58–310A and for leasing grazing land pursuant to I.C. § 58–310B. We conclude that I.C. § 58–310 is a "regulation[ ] ... prescribed by law" that the Board has a duty to follow for the rental of the school endowment public lands. Therefore, on remand, we direct that the Board follow the procedures in I.C. § 58–310 in leasing the land covered by the 1996 leases we have invalidated by our opinion today.

Because of this resolution of the appeal, we do not reach other issues presented.

### III.

### CONCLUSION

We reverse the judgment of the trial court upholding the decisions of the Board regarding IWP's grazing lease applications.

We remand to the Board for new auctions of the 1996 leases for which IWP was not allowed to bid.

We award IWP costs on appeal.

Justices SILAK, SCHROEDER, WALTERS, and Justice Pro Tem BURDICK, concur.