982 P.2d 371

**IDAHO WATERSHEDS PROJECT, an Idaho non-profit organization, Plaintiff–Appellant,**

v.

**STATE BOARD OF LAND COMMISSIONERS, comprised of Phil Batt, Governor, Pete T. Cenarrusa, Secretary of State, Alan G. Lance, Attorney General, J.D. Williams, State Controller, and Anne C. Fox, Superintendent of Public Instruction, all in their official capacities, and Idaho Department Of Lands, an agency of the State of Idaho, Defendants–Respondents.**

No. 24239.

Supreme Court of Idaho, Boise, December 1998 Term.

April 2, 1999.

Lawrence (Laird) J. Lucas, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Stephanie A. Balzarini, Deputy Attorney General, Boise, for respondents. Stephanie A. Balzarini argued.

SCHROEDER, Justice.

This is an appeal by Idaho Watersheds Project (IWP) from the district court's grant of summary judgment in favor of the State Board of Land Commissioners (the Board) and the Idaho Department of Lands (the Department) (or collectively referred to as the State). The district court affirmed the Board's decision to reject fourteen of IWP's 1995 lease applications for grazing leases on state endowment lands and to award the leases to the prior lessee without an auction. In a companion case, the Board refused to allow IWP to bid at auction on several grazing lease applications it filed in 1996, and IWP appealed that decision in *Idaho Watersheds Project v. State Board of Land Commissioners,* 133 Idaho 64, 982 P.2d 367 (1999) (*IWP II* ). Both this case and *IWP II* involve IWP's challenge to the constitutional validity of section 58–310B of the Idaho Code (I.C.), which sets forth criteria the Board may consider in determining whether an applicant is qualified to bid on a lease at auction.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

In 1995, IWP submitted sixteen conflict lease applications for grazing leases on state endowment lands to the Department. A lease conflict occurs when an application is submitted by a person who is not the current lessee of the land covered by the application.

All of IWP's applications stated that IWP sought to lease the lands for purposes of "grazing and riparian enhancement." The applications encompassed a wide variety of endowment lands across Idaho, all which involve parcels which are designated primarily for grazing or primarily for timber production, with grazing only as a secondary use.[1]

At its regular meeting on October 10, 1995, the Board determined that it would conduct a special meeting to consider the grazing lease conflicts, and would allow the opportunity for oral testimony before the Board for those applicants whose qualified status was questionable. The Board also determined that the applicants would be required to support their applications with written information which would tend to show they were qualified to bid at auction pursuant to the criteria outlined in I.C. § 58–310B.

In accordance with the Board's October 10, 1995 direction, the Department requested that the applicants provide, in writing, a statement of qualification supporting each application. IWP submitted statements of qualification relating to each of its sixteen lease applications, but IWP objected that I.C. § 58–310B was unconstitutional.

Upon receipt of the statements of qualification, the Department compiled statements of fact regarding each lease conflict along with all written materials submitted by the applicants. These materials were provided to the Board for its consideration at the Board's special meeting on December 11, 1995, where the Board would consider the "qualified applicant" status of all 1995 conflict lease applicants.

Prior to the December 11, 1995 meeting, IWP filed a motion asking the Board to disregard I.C. § 58–310B as unconstitutional and to hold auctions pursuant to Art. IX, § 8 of the Idaho Constitution and this Court's decision in *East Side Blaine County Livestock Ass'n v. State Board of Land Commissioners,* 34 Idaho 807, 198 P. 760 (1921). The

---

1. During oral argument, the State argued for the first time that some of the parcels of land IWP sought grazing leases for in 1995 were not state endowment lands. This statement is contrary to the record which clearly indicates that all of the land at issue in this case is state endowment land. IWP's amended complaint alleged that it submitted sixteen conflict applications for grazing leases on state endowment lands in 1995. The State did not deny this allegation in its answer, nor did it suggest otherwise in its appellate brief.

Department recommended IWP's motion be denied, stating that the Board had to follow I.C. § 58–310B "absent a finding by the court that [its provisions] are unconstitutional." The Board agreed and rejected IWP's motion.

After hearing testimony from various parties on December 11, 1995, the Board voted to deny IWP qualified applicant status with respect to its applications on four parcels in Owyhee County, presently leased by Simplot Livestock. The Board approved IWP as a qualified applicant for its Squaw Creek application but delayed consideration of all remaining lease applications until a later meeting.

IWP commenced the present action by filing a Complaint for Declaratory Relief, Writ of Mandate, Damages and/or Judicial Review on January 8, 1996, challenging the Board's rejection of its Owyhee lease applications. The parties agreed to stay the litigation when the Board voted to reconsider its decision.

At its April 5, 1996, special meeting, the Board considered the remaining conflict applications, including reconsideration of IWP's Owyhee County applications. The Department provided the Board with briefing materials setting forth recommendations with respect to the disposition of all remaining lease applications. The briefing material included a memo from the Department describing IWP's supposed motives and tactics in seeking to acquire state leases and recommending that the Board reject IWP as a "qualified applicant" on the Owyhee County leases and all other parcels IWP sought, except Icehouse Creek. IWP objected to the Department's briefing and requested an opportunity to respond in writing. The Board agreed to delay its decision in order to permit IWP to respond.

On April 12, 1996, IWP submitted a detailed written response to the Department's memo. Thereafter, the Board held a special meeting on April 18, 1996, to consider the remaining grazing lease applications. After hearing additional testimony from IWP and others, the Board voted to reject fourteen of IWP's remaining applications and to accept IWP's application for the Ice House Creek parcel. The Board rejected IWP's Owyhee County applications based on its "threshold consideration that the lands be leased for uses consistent with their current classification for grazing purposes as part of large, multiple-ownership grazing management systems." Implicit in its determination is the Board's disbelief of IWP's stated intentions for using the land and its belief that IWP's true intentions were to use the land for "non-grazing purposes." Because "non-grazing" use was inconsistent with the current grazing classification of the land, the Board rejected IWP's applications for these parcels. The Board applied this same rationale in rejecting the remainder of IWP's applications. The Board awarded the leases relating to IWP's fourteen rejected applications to the prior lessees without an auction.

IWP filed an amended complaint on May 14, 1996. IWP sought a writ of mandate from the district court ordering the State to conduct auctions over IWP's lease applications. The district court denied the writ, concluding that the constitutionality of I.C. § 58–310B could not be determined upon mandamus. IWP then challenged the constitutionality of I.C. § 58–310B in a motion for partial summary judgment. The district court deferred ruling on IWP's motion while the parties briefed IWP's claims for judicial review under the Idaho Administrative Procedures Act (IDAPA).

IWP applied for additional expiring school endowment leases in June 1996. Unlike IWP's 1995 lease applications, the State accepted IWP's 1996 lease applications as being consistent with the lands' current grazing designation, but the Board rejected the applications on the grounds that IWP was not a "qualified applicant" to bid at auction under I.C. § 58–310B. IWP filed a motion to consolidate, seeking to have all its claims over the 1995 and 1996 lease applications adjudicated together. The district court denied the motion, instructing IWP to proceed with two separate actions. This Court addressed IWP's challenge to the Board's decision regarding its 1996 lease applications in *IWP II*.

With regard to IWP's claims involving its 1995 lease applications, the district court

granted summary judgment in favor of the State on May 27, 1997. Noting that the Board had wide discretion to "direct, control and dispose of [state endowment] lands," the district court concluded that there was "no reason for judicial interference with the Land Board's decision and ... that Idaho Code § 58–310B, is constitutional." Judgment was entered on June 13, 1997. An Amended Judgment was entered on September 10, 1997, denying IWP's claims for declaratory relief, writ of mandate and judicial review. IWP filed a timely notice of appeal from the amended judgment.

## II.

### IWP HAS STANDING TO CHALLENGE THE CONSTITUTIONAL VALIDITY OF I.C. § 58–310B.

IWP argues that I.C. § 58–310B is unconstitutional because it violates Art. IX, § 8 of the Idaho Constitution. The constitutional arguments IWP makes in this case are the same it made in *IWP II*. This Court in *IWP II* recognized that "Article IX, § 8 requires that the State consider only the 'maximum long term financial return' to the schools in the leasing of school endowment public grazing lands." *IWP II*, 133 Idaho at 64, 982 P.2d at 367. Because I.C. § 58–310B attempts to promote funding for schools, the state in general, and specifically the Idaho livestock industry, the *IWP II* court held that it violates the requirements of Art. IX, § 8 and is therefore unconstitutional. *Id.*

The State argues that IWP does not have standing to challenge the constitutionality of I.C. § 58–310B in this case because, unlike in *IWP II*, the Board did not apply the specific provisions of I.C. § 58–310B when it decided to reject IWP's 1995 lease applications. Rather, the Board argues that it denied IWP's 1995 lease applications based on general land classification concerns, not § 58–310B factors.

The record clearly indicates that the State was acting under the mandate of I.C. § 58–310B when it determined that IWP was not a "qualified applicant" to bid at auction and, based on that determination, rejected IWP's 1995 lease applications. After receiving IWP's 1995 lease applications, the Department wrote several letters to IWP stating that the applications were valid and that the next step would be for the Board to review IWP's qualifications under the criteria of I.C. § 58–310B to determine whether IWP was eligible to bid at auction for the lands covered under its applications. Thereafter, the Department sent IWP and other applicants a letter requesting them to complete a "Statement of Qualification" indicating how they satisfied the criteria for a qualified applicant under I.C. § 58–310B. The numerous notices sent by the Department advising IWP of the Board's special meetings concerning the 1995 lease applications stated that the purpose of the meetings was to determine whether IWP was a qualified applicant under I.C. § 58–310B. The Department acknowledged that I.C. § 58–310B "creates a new layer of pre-auction Board review in cases involving expiring grazing leases" and that this level of review did not exist prior to the enactment of I.C. § 58–310B.

As a result of the Board's application of I.C. § 58–310B in deciding to reject IWP's 1995 lease applications, IWP was denied an opportunity to participate in auctions for the leases. Thus, for the same reasons IWP had standing in *IWP II*, IWP has standing in this case to challenge the validity of I.C. § 58–310B. Based on this Court's holding in *IWP II* that I.C. § 58–310B is unconstitutional, the Board's decision to reject IWP's 1995 lease applications is reversed and the case is remanded to the Board. Similar to the Court's determination in *IWP II*, the 1995 leases the Board awarded for which IWP was an applicant but was not allowed to bid at auction were improperly awarded and must be opened for applications again. On remand, the Board must auction off and lease the land in question pursuant to the procedures in I.C. § 58–310.

Because of this resolution of the appeal, the Court will not address the other issues presented.

## III.

### CONCLUSION

The district court's grant of summary judgment in favor of the State is reversed.

The case is remanded to the Board for new auctions of the 1995 leases for which IWP was not allowed to bid. IWP is awarded costs on appeal.

Justices SILAK and WALTERS, and Justices Pro Tem JOHNSON and BURDICK, concur.