# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39084

HON. LAWRENCE G. WASDEN, in his
capacity as Attorney General of Idaho, ex rel.
STATE ENDOWMENT LAND
BENEFICIARIES,

    Plaintiff-Appellant-Cross-Respondent,

v.

STATE BOARD OF LAND
COMMISSIONERS, and GEORGE BACON,
in his official capacity as Director of the
IDAHO DEPARTMENT OF LANDS,

    Defendants-Respondents-Cross-
    Respondents,

and

GLADYS BABCOCK, et al.,

    Defendants-in-Intervention-Respondents-
    Cross Appellants,

and

PRIEST LAKE STATE LESSEES
ASSOCIATION, INC.,

    Defendant Intervenor-Respondent-
    Cross-Respondent.

_____

GLADYS BABCOCK, as Trustee of the
BABCOCK TRUST, et al.,

    Plaintiffs-Cross-Appellants,

v.

IDAHO BOARD OF LAND
COMMISSIONERS and GEORGE BACON,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2012 Term

2012 Opinion No. 104

Filed: June 29, 2012

Stephen W. Kenyon, Clerk

**In his official capacity as Director of the** )
**IDAHO DEPARTMENT OF LANDS,** )
                               )
    **Defendants-Cross-Respondents.** )
_____ )

> Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Valley County. Hon. Michael R. McLaughlin, District Judge.

> The judgment of the district court is <u>reversed</u>, in part, and <u>vacated</u>, in part, and the case is <u>remanded</u>.

> Hon. Lawrence G. Wasden, Attorney General, Boise, appellant-cross-respondent and for cross-respondents Idaho Board of Land Commissioners and George Bacon. Clive J. Strong argued.

> Farley Oberrecht West Harwood & Burke, P.A., Boise, for respondent cross-appellant. Phillip S. Obrerrecht argued.

> Charles B. Lempesis, Chtd., Coeur d'Alene, for respondent Priest Lake State Lessees Association, Inc. Charles B. Lempesis argued.
> _____

J. JONES, Justice.

    This is a consolidation of two actions relating to residential leases on State endowment lands. In one action, the Attorney General sought a declaratory ruling that I.C. § 58-310A, which exempts so-called "cottage site" leases from conflict auctions, is unconstitutional in light of Article IX, § 8 of the Idaho Constitution. The district court determined that I.C. § 58-310A was not violative of the Idaho Constitution, and, thus, dismissed the Attorney General's complaint. The Attorney General appeals that decision. In the other action, Gladys Babcock and several others who lease cottage sites on Payette Lake (collectively "Payette Lake Lessees") filed an action against the State Board of Land Commissioners and the Idaho Department of Lands Director. The Payette Lake Lessees alleged that the Board breached their lease agreements when it declined to renew the expiring leases for an additional ten years. The district court granted summary judgment to the Board, finding the Payette Lake Lessees had failed to exhaust their administrative remedies. The Payette Lake Lessees filed a cross-appeal challenging that decision. We reverse the district court's ruling on the Attorney General's claim because I.C. § 58-310A is unconstitutional. We vacate the district court's holding with respect to the Payette Lake Lessees' claim and remand for

further proceedings.

# I.
# BACKGROUND

The State Board of Land Commissioners is composed of the Governor, the Secretary of State, the State Controller, the Attorney General, and the Superintendent of Public Instruction. Idaho Const. art. IX, § 7. The Board members are trustees of about 2.5 million acres of lands that the United States granted in trust to the State to support public schools and certain other public institutions. *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 133 Idaho 55, 56 n.1, 982 P.2d 358, 359 n.1 (1999). The State's endowment trust lands include 354 residential lots on Priest Lake in northern Idaho and 168 lots on Payette Lake in central Idaho. These residential lots are commonly known as "cottage sites."

In 2001, the Payette Lake Lessees, or their predecessors in interest, signed ten-year leases for cottage sites on Payette Lake. The leases expressly stated that they terminated on December 31, 2010. Annual rent for the lease term between 2001 and 2011 was "two and one half [percent] (2.5%) of current fee simple value . . . as determined by valuation administered by the [Board] or by valuation as determined by the assessor." *Id.*

In 2007, the Board initiated proceedings to set a new rental rate for cottage site leases. In March 2010, the Board determined that market rent for the cottage sites was 4% of the ten-year average value of the land and adopted that rate for all new or renewed leases, to be phased in over the course of five years. The Department of Lands subsequently notified the Payette Lake Lessees of the new terms that would govern cottage site leases beginning in 2011.

The Payette Lake Lessees filed their action against the Board in October 2010, alleging, among other things, that the Board's decision to increase rent breached the terms of the existing leases. The Payette Lake Lessees contended they had a contractual right to renew their leases for another ten years under terms identical to those in the expiring leases.

In December 2010, the Attorney General filed an action to enjoin the Board from implementing the new lease rate[1] and to challenge the constitutionality of I.C. § 58-310A. In most circumstances, when two or more people seek to lease State endowment land, the Department of

---

[1] The Attorney General had earlier filed a petition with this Court seeking a writ of prohibition to stop the Board from implementing the new lease rate. *Wasden v. State Bd. of Land Comm'rs*, 150 Idaho 547, 249 P.3d 346 (2010). The Court determined there was "a plain, speedy, and adequate remedy in the ordinary course of law," making an extraordinary writ inappropriate, and thus dismissed the Attorney General's petition. *Id.* at 554, 249 P.3d at 353. The Attorney General filed this action the day after the Court dismissed his petition.

Lands is required to hold an auction and award the lease to the highest bidder. *See* I.C. § 58-310(1). But I.C. § 58-310A exempts cottage site leases from this "conflict auction" requirement. I.C. § 58-310A(2). The Attorney General averred that the exemption of cottage sites from conflict auctions violates the Board's trust obligations as defined by Article IX, § 8 of the Idaho Constitution. The Attorney General also requested a preliminary injunction to prevent the Board from implementing the new lease rate, based on the alleged constitutional infirmity of I.C. § 58-310A. The district court granted the preliminary injunction on December 17, 2010.[2]

Shortly after issuance of the injunction, the Board met and voted to extend for one year the terms of the existing cottage site leases, including the 2.5% rental rate. The Board also superseded its March 2010 decision with a new plan—beginning in 2012, cottage site leases would be offered at a rate of 4% of current market value for a ten-year term.

Both the Payette Lake Lessees and the Board moved for summary judgment on the Payette Lake Lessees' contract claim. The district court concluded that the Payette Lake Lessees should have filed a petition for judicial review to challenge the Board's decision, rather than bringing a contract action. The court thus concluded that the Payette Lake Lessees failed to exhaust their administrative remedies and granted the Board summary judgment. The Attorney General moved for summary judgment on his claim challenging I.C. § 58-310A.[3] The court determined that I.C. § 58-310A did not conflict with Article IX, § 8 of the Idaho Constitution. It therefore denied the Attorney General's motion for summary judgment and ultimately dismissed his complaint. The Attorney General and the Payette Lake Lessees timely appealed to this Court. On appeal, the Priest Lake State Lessees Association, Inc. ("Priest Lake Lessees") is participating as a respondent, opposing the Attorney General's claim. The Priest Lake Lessees have not weighed in on the Payette Lake Lessees' contract action.

## II.
## ISSUES ON APPEAL

I.   Does the Attorney General have standing to pursue his claim that I.C. § 58-310A is unconstitutional?

II.  Is I.C. § 58-310A violative of Article IX, § 8 of the Idaho Constitution?

---

[2] District Judge Deborah Bail was initially assigned the Attorney General's action and presided over the case until its consolidation with the Payette Lake Lessees' case before District Judge Michael McLaughlin.

[3] The Board did not oppose the Attorney General's summary judgment motion and, in fact, ultimately sought realignment as a plaintiff in the Attorney General's action.

4

III.    If I.C. § 58-310A is unconstitutional, must the entire statute fail, or are the constitutionally infirm portions severable?

IV.    Did the district court err in holding the Payette Lake Lessees were required to exhaust administrative remedies on their contract claim?

## III.
## ANALYSIS

### A.    Standard of Review.

In appeals from a summary judgment, this Court employs the same standard as the district court. *Cnty. of Boise v. Idaho Counties Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). The court must grant summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "This Court exercises free review over questions of law, including jurisdictional and constitutional issues." *Allied Bail Bonds, Inc. v. Cnty. of Kootenai*, 151 Idaho 405, 409, 258 P.3d 340, 344 (2011).

### B.    The Attorney General's action.

The Attorney General claims the district court erred in failing to find I.C. § 58-310A violative of Article IX, § 8, which sets out the Board's trust responsibilities with regard to endowment lands. The Attorney General contends that Article IX, § 8, requires a public auction for any "disposal" of endowment land and that a lease of endowment land is a disposal within the meaning of the provision. The district court ruled that disposal only relates to a fee interest and, therefore, the Legislature was acting within its authority in exempting cottage site leases from the public auction requirement. The Respondents agree, contending that the Board's only constitutional obligation is to maximize the long-term financial return from the cottage sites.

Before addressing the merits of the Attorney General's action, we consider an issue raised by the Priest Lake Lessees—that the Attorney General lacks standing to pursue his claim. The standing issue having been raised, we address it first. *See Young v. City of Ketchum*, 137 Idaho 102, 104, 44 P.3d 1157, 1159 (2002) ("Standing is a preliminary question to be determined by this Court before reaching the merits of the case.")

#### 1.    The Attorney General has standing to challenge I.C. § 58-310A.

The Attorney General is a duly elected constitutional officer of the people of Idaho. Idaho Const. art. IV, §§ 1 and 2. So, when he files an action on behalf of the people or particular

State clients, he is fundamentally different than other litigants before the Court and not easily shoehorned into a typical standing analysis. This Court has articulated a standing doctrine analogous to the federal rule:

> The essence of the standing inquiry is whether the party seeking to invoke the court's jurisdiction has "alleged such a personal stake in the outcome of the controversy as to assure the concrete adversariness which sharpens the presentation upon which the court so depends for illumination of difficult constitutional questions."

*Miles v. Idaho Power Co.*, 116 Idaho 635, 641, 778 P.2d 757, 763 (1989) (quoting *Duke Power Co. v. Carolina Envt'l Study Group,* 438 U.S. 59, 72 (1978)). Thus, the Court's standing inquiry considers whether the complaining party has alleged a particularized injury, caused by his or her adversary, which is redressable by a favorable decision in the litigation. *See Van Valkenburgh v. Citizens for Term Limits*, 135 Idaho 121, 124–25, 15 P.3d 1129, 1132–33 (2000) (explaining and applying Idaho's standing doctrine).

The federal standing doctrine arises from Article III, § 2 of the United States Constitution, which limits the federal judicial power to "cases and controversies" arising under the laws of the United States. U.S. Const. art. III, § 2; *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009). The "case and controversy" language "confine[s] 'the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process.'" *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007). The federal standing doctrine reflects a limitation on federal judicial power—by ensuring itself the elements of standing are met, a federal court will not intrude on authority vested in the political branches of government. *Summers*, 555 U.S. at 492–93. But the U.S. Supreme Court has recognized that when a state litigates in federal court to protect the interests of its people, the state is "entitled to special solicitude in [the] standing analysis." *Massachusetts*, 549 U.S. at 520. Thus, when a state acts to protect sovereign interests, the Court has focused on maintaining the integrity of the adversarial process, and ensuring that an exercise of judicial power will be able to remedy the state's complained-of harm. *See id.* at 521 (explaining that EPA's intransigence created a risk of harm that was likely remedied by a decision favorable to Massachusetts and its co-plaintiffs). In other words, in that special circumstance, the federal courts alter their standing analysis.

Notably, Idaho's Constitution has no "case and controversy" clause like the federal

6

Constitution. Rather, Idaho's Constitution speaks generally of the "judicial power," without defining its limits. Idaho Const. art. V, § 2. Furthermore, the Idaho Constitution empowers this Court to review any decision of the district courts. Idaho Const. art. V, § 9. And, the Legislature, exercising its limited authority to constitute inferior courts under Idaho Const. art. V, § 13, has directed the district courts to "hear[ ] and determin[e] all matters and causes arising under the laws of this state." I.C. § 1-701. This Court may therefore consider appeals from the district courts on all matters arising under Idaho law. Even though this Court is not bound by the parameters of the federal courts' standing doctrine, the Attorney General, like state litigants in federal court, should be entitled to special solicitude in the standing analysis because he litigates on behalf of the people of Idaho and their sovereign interests.

As a constitutional officer, and the people's elected lawyer, the Attorney General plays a unique role in State affairs. He has a number of statutorily imposed duties that are exclusive to his office. *See* I.C. § 67-1401 (listing the legal duties of the Attorney General). He has a broad mandate "[t]o exercise all the common law power and authority usually appertaining to [his] office and to discharge the other duties prescribed by law." I.C. § 67-1401(11). As legal counsel for Idaho's Legislature, the Attorney General is charged with defending the validity of legislative enactments. As the State's legal counsel, the Attorney General is responsible for supporting and upholding Idaho's Constitution. Indeed, like other State elected officers, the Attorney General is required by the Legislature to swear a loyalty oath to support the Idaho Constitution and faithfully discharge his duties. I.C. § 59-401. Therefore, it is incumbent upon the Attorney General to safeguard the Constitution against legislative enactments that encroach upon or conflict with its provisions. Where, as here, a legislative enactment appears to clash with the constitutional duties of a State board, it seems axiomatic that the Attorney General must step forward to uphold the Constitution.

The Attorney General also has specific statutory duties that bear on the issue here. Among other things, the Attorney General has the duty:

> [t]o supervise . . . persons holding property subject to any public or charitable trust and to enforce whenever necessary any noncompliance or departure from the general purpose of such trust . . . . In case of any such failure or departure, the attorney general shall institute, in the name of the state, any proceeding necessary to enforce compliance with the terms of the trust or any departure therefrom.

I.C. § 67-1401(5). Moreover, Idaho law directs him "[t]o seek injunctive and any other

7

appropriate relief as expeditiously as possible to preserve the rights and property of the residents of the state of Idaho." I.C. § 67-1401(15).

The State's endowment lands are part of a sacred trust reserved for the benefit of Idaho's public schools and public institutions. The Board, which manages those endowment lands, is the epitomic public trustee. The Attorney General is obligated to remedy noncompliance with trust responsibilities in order to safeguard the interests of trust beneficiaries. In this proceeding, the Attorney General wears two hats. He is both the State's lawyer, with the responsibility of carrying out the duties specified in I.C. § 67-1401, but also a trustee of the State's endowment lands. As a trustee, the Attorney General has the obligation "to prosecute or defend actions . . . for the protection of trust assets and of the trustee in the performance of his duties." I.C. § 68-106(c)(25). This would include actions to safeguard trust assets and to prevent unconstitutional encroachment upon the ability of the trustees to carry out their trust responsibilities.

The Priest Lake Lessees argue that there is no evidence that any trust beneficiary has sustained any pecuniary loss or injury resulting from the failure to conduct conflict auctions for cottage sites.[4] In addition, they assert that no beneficiaries have come forward to complain about I.C. § 58-310A or to urge that it be struck down. It is passing strange that no school officials or endowment beneficiaries have stepped forward in this litigation, but that is of no import. A trust beneficiary does not define the trust responsibilities of the trustees. Rather, the trust instrument—in this case, Article IX, § 8 of the Idaho Constitution—defines the responsibilities of the Board with regard to the endowment trust. If the Legislature has enacted a provision infringing upon their constitutional trust responsibilities, it is the obligation of the trustees to step forward and seek remedial action.

Because of the unique position of the Attorney General as counsel for the State of Idaho and as a trustee of the State endowment lands, the Attorney General is not subject to the usual standing analysis. But, even if that were the case, the Attorney General has standing here. He is pursuing this action on behalf of the endowment land beneficiaries. In that regard, he is not unlike any other attorney who represents the interests of a client. Thus, a standing inquiry must focus on the endowment beneficiaries, and their interest in the litigation. The endowment

---

[4] Standing does not require proof of a pecuniary loss or injury. Rather, it requires that a litigant "allege or demonstrate an injury in fact." *Van Valkenburgh*, 135 Idaho at 124, 15 P.3d at 1132. The Attorney General has done so here. He alleges that the Board, by observing the requirements of I.C. § 58-310A and failing to conduct conflict auctions for cabin site leases, has inflicted injury on the beneficiaries of these recreational endowment lands.

8

beneficiaries meet all the standing requirements. First, there is an alleged injury—if the Board follows the legislative mandate in I.C. § 58-310A, it violates its sacred trust responsibility as defined in Article IX, § 8 of the Idaho Constitution. Second, the alleged injury is caused by the Board's continued application of the statute. Third, a favorable decision from the Court will redress the complained-of injury because the Board would be relieved of compliance with the statute. Thus, the Attorney General unquestionably has standing to bring this challenge on behalf of the endowment beneficiaries.

## 2.      I.C. § 58-310A is unconstitutional.

On the merits of the Attorney General's action, the Court applies the rules of statutory construction to construe constitutional provisions. *Sweeney v. Otter*, 119 Idaho 135, 138, 804 P.2d 308, 311 (1990). The Court will give effect to the plain language of an unambiguous statutory or constitutional provision. *Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 894–95, 265 P.3d 502, 507–08 (2011). It reviews the provision's language as a whole, considering the meaning of each word, so as not to render any word superfluous or redundant. *BHC Intermountain Hosp., Inc. v. Ada Cnty.*, 150 Idaho 93, 95, 244 P.3d 237, 239 (2010).

The Idaho Constitution specifies the Board's duties in managing State endowment lands. Article IX, § 8, expressly states that endowment lands must be held in trust to secure the maximum long term financial return, subject to "disposal" at public auction:

> It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or rental of all the [endowment] lands . . . in such manner as will secure the maximum long term financial return to the institution to which granted or to the state if not specifically granted . . . . The legislature shall, at the earliest practicable period, provide by law that the general grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of the respective object for which said grants of land were made . . . .

Idaho Const. art. IX, § 8. However, Idaho Code § 58-310A specifically exempts cottage sites from the public auction requirement:

> It is hereby declared that leases for single family, recreational cottage sites and homesites shall not be subject to the conflict application and auction provisions of sections 58-307 and 58-310, Idaho Code. The board shall reject any and all pending and future conflict applications filed under sections 58-307 and 58-310, Idaho Code, for single family, recreational cottage site and homesite leases.

I.C. § 58-310A(2). The question presented, then, is whether the word "disposal" in Article IX, §

9

8 contemplates leases, rendering I.C. § 58-310A's auction exemption unconstitutional.

Reading "disposal," in Article IX, § 8, to include both leases and sales of land is consistent with the Court's earlier decisions and the context of the word. The Court has recognized that "[t]he Board does not have the discretion to grant a lease to an applicant who does not place a bid at an auction, based upon Idaho's constitutional and statutory mandate that the Board conduct an auction. Idaho Const. art. IX, § 8; I.C. § 58-310." *Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 128 Idaho 761, 766, 918 P.2d 1206, 1211 (1996) (*IWP 1*). In *IWP 1*, the Court did not explicitly state that Article IX, § 8 is the only basis for the auction requirement, but it implied that the Constitution is one mandatory basis for auctions, while statutory provisions are another. *Id.* This conclusion follows *East Side Blaine Cnty. Livestock Ass'n v. State Bd. of Land Comm'rs*, where the Court explained that

> [t]he dominant purpose of [Idaho Const. art. IX, §§ 7, 8] and of the statutes enacted thereunder is that the state shall receive the greatest possible amount for the lease of school lands for the benefit of the school funds, and for this reason *competitive bidding is made mandatory*.

34 Idaho 807, 814, 198 P. 760, 763 (1921) (emphasis added). According to *East Side Blaine Cnty.*, which pre-dates I.C. § 58-310A, the Board breached its duty as trustee when it failed to lease endowment lands to the highest bidder in a public auction. *Id.* at 815, 198 P. at 763. More recently, two current members of this Court agreed that "I.C. § 58-310A is clearly unconstitutional as—in eliminating the conflict auction procedure and instead requiring 'market rent'—the legislature encroached upon the discretion constitutionally granted to the Land Board." *Wasden v. State Bd. of Land Comm'rs*, 150 Idaho 547, 558 n.10, 249 P.3d 346, 360 n.10 (2010) (Burdick, J., dissenting).

Furthermore, the manner in which Article IX, § 8, uses "disposal" suggests it means both leases and sales of endowment lands. In addition to "disposal," the Section variously refers to "sale," "rental," "or other disposition of such lands." Idaho Const. art. IX, § 8. Indeed, under Section 8, the Legislature is obligated to pass laws that provide for "disposal" of endowment lands for the use and benefit of public institutions, *and* the Legislature is tasked with creating rules for "the sale of said lands":

> The legislature shall . . . provide by law that the general grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust, subject to disposal at public auction for the use and benefit of the respective object for which said grants of land were made, and the legislature

10

shall provide for the sale of said lands from time to time and for the sale of timber on all state lands and for the faithful application of the proceeds thereof . . . .

Idaho Const. art. IX, § 8. The "disposal" or "disposition" of public lands obviously includes the sale thereof and just as obviously includes other types of disposal or disposition. "No law shall ever be passed by the legislature granting any privileges to persons who may have settled upon any such public lands . . . by which the amount derived by the *sale, or other disposition* of such lands, shall be diminished, directly or indirectly." *Id.* (emphasis added). "Other disposition" certainly means something other than sale.[5] If the Constitution intended only sales of lands to be conducted at public auction, it would say so. It follows that "disposal" incorporates conveyances other than just sales—it contemplates both sales and leases.

The Court said as much in *Idaho Watersheds Project v. Bd. of Land Comm'rs* (*IWP 2*), where it invalidated a constitutional amendment to Article IX, § 8, which sought to change the word "disposal" to "sale." 133 Idaho 55, 60, 982 P.2d 358, 363 (1999). The Court explained that the amendment involved "whether auctions should take place regarding only sales, as opposed to leases and sales, of school endowment lands." *Id.* The Court thus recognized that the existing use of "disposal" in Article IX, § 8, had a definition other than "sale"—namely, "leases and sales." Importantly, the Court's distinction between "disposal" and "sale" was central to its holding. The challenge in *IWP 2* was founded upon Article XX, § 2, of the Idaho Constitution. *IWP 2*, 133 Idaho at 60, 982 P.2d at 363. Article XX, § 2, requires two or more proposed constitutional amendments to be submitted separately for popular vote. *Id.* In *IWP 2*, the petitioners argued that two recently adopted amendments were presented for a single vote, in contravention of Article XX, § 2. *Id.* Thus, the Court had to determine whether the proposed amendment dealt with multiple, distinct subjects, or a single subject. *Id.* In reaching its decision, the Court therefore considered what the amendment would do. *Id.* It determined that one effect was to limit public auctions to *sales* of endowment lands, rather than requiring auctions for *leases and sales*, as Article IX, § 8, previously (and presently) required.[6] *Id.* Thus,

---

[5] During the drafting of the Idaho Constitution, delegate J.W. Reid explained that the wording "or other disposition" meant: "Now this gives power to sell and dispose of these lands by sale, lease or any other way." I.W. Hart, *Proceedings and Debates of the Constitutional Convention of Idaho 1889*, 755-56 (1910).

[6] The other effect of the amendment was to change how endowment land proceeds are invested. *IWP 2*, 133 Idaho at 60, 982 P.2d at 363. This was also central to the Court's holding in that case, but is unimportant here. The only thing that matters for this analysis is that the Court considered whether the amendment had separate, unrelated issues, that should have been submitted to the voters separately. *Id.*

11

the Court has already opined that "disposal" in Article IX, § 8, encompasses both leases and sales.

The language of Article IX, § 8, unambiguously requires that any disposal of endowment land must be at public auction. "Disposal," as this Court has indicated and as is apparent from the context of Article IX, § 8, means any lease or sale. Thus, Article IX, § 8 requires public auctions for leases of endowment lands. Because the language is unambiguous, the Court need not look beyond the plain language of the Constitution. Accordingly, I.C. § 58-310A runs afoul of Article IX, § 8 because it exempts cottage site leases from the public auction requirement. I.C. § 58-310A is therefor unconstitutional.

### 3.      The entirety of I.C. § 58-310A fails.

Idaho Code § 58-310A is unconstitutional as a whole, not being severable. "When part of a statute or ordinance is unconstitutional and yet is not an integral or indispensable part of the measure, the invalid portion may be stricken without affecting the remainder of the statute or ordinance." *Voyles v. City of Nampa*, 97 Idaho 597, 600, 548 P.2d 1217, 1220 (1976). The exemption from conflict auctions is the sole basis for I.C. § 58-310A. The statute's title makes that clear: "Legislative findings and purposes—Leases of single family, recreational cottage sites and homesites not subject to conflict application and auction provisions." I.C. § 58-310A.

Furthermore, there is nothing of substance in I.C. § 58-310A beyond the auction exemption. The statute is divided into three main subsections. The first explains the Legislature's findings and rationale for exempting cottage sites from auctions. I.C. § 58-310A(1). The second exempts all cottage sites from auctions and directs the Board to "reject any and all pending and future conflict applications filed under sections 58-307 and 58-310, Idaho Code, for single family, recreational cottage site and homesite leases." I.C. § 58-310A(2). The final subsection instructs the Board that, in lieu of an auction procedure, it must "insure that each leased lot generates market rent throughout the duration of the lease." I.C. § 58-310A. But, if the Board must hold auctions for any lease, every aspect of the statute that relates to something other than auctions is either moot or superfluous. After all, the Board has a constitutional obligation to maximize long-term financial returns, which is akin to requiring it to "insure that each leased lot generates market rent"; and the Legislature's findings about the detrimental aspects of auctions are irrelevant.

In sum, because we determine the auction exemption in I.C. § 58-310A to be

12

constitutionally impermissible, the remainder of the statute does nothing other than explain the Legislature's preference for giving long-term leaseholders preferential treatment. The auction exemption is an indispensable part of I.C. § 58-310A and cannot be stricken without eviscerating the statute. Accordingly, we hold that I.C. § 58-310A is not severable.

### C.      The Payette Lake Lessees' action.

The Payette Lake Lessees argue that the district court wrongly dismissed their action for failing to exhaust administrative remedies. They say they are entitled to a hearing on the merits of their contract claim in a regular civil proceeding. The Board responds that the Payette Lake Lessees' claim is the subject of administrative law and should be raised in a petition for judicial review. Alternatively, the Board contends that the cross-appeal is moot because the district court already ruled on the merits of the Payette Lake Lessees' contract claim in another proceeding.

The district court has ruled on the merits of the Payette Lake Lessees' contract claim. In May 2011, about a month before the district court issued its decision in this action, the Payette Lake Lessees filed a petition for judicial review raising the same contract claim. The issue presented in the Payette Lake Lessees' petition for judicial review was, "Whether the 2001 cottage site lease provided the Payette Lake Lessees with a right to renew the lease for a ten-year period under the same terms and conditions." That is essentially the same question raised in this action: "Lessees filed this action seeking specific performance of the terms of the 2001 Leases, including the continuation of the 2.5% rent formula." In the judicial review the district court determined as a matter of law that the Board had the discretion and authority to set the terms and conditions of any renewal leases with the Payette Lake Lessees. While the district court's reasoning in the administrative appeal appears to be sound, it is not before the Court at the present time. That proceeding has apparently been appealed to this Court, but the parties have stayed the appeal pending the outcome of this current appeal.

The question we are presented with here is whether the Payette Lake Lessees are limited to bringing their breach of contract claim as an administrative appeal under the Idaho Administrative Procedure Act. Chapter 52, Title 67, Idaho Code. The short answer is "no." Although administrative action may have influenced the Board's decision to require new leases with different terms in 2011 and 2012, rather than simply renewing the 2001 leases, this case presents an issue subject to determination by declaratory judgment under I.C. § 10-1202. The Payette Lake Lessees contend they acquired their renewal rights under the language contained in the 2001

leases. Administrative action taken ten years later would not change the language of the 2001 leases. In essence, the Payette Lake Lessees seek a determination as to whether the language in their 2001 leases entitled them to an unconditional ten-year renewal on the same terms and conditions. So, the case presented is one of contract interpretation, rather than a challenge to administrative action. The court erred in holding that the proper course of action for the Payette Lake Lessees to pursue was a proceeding for judicial review, requiring that they first exhaust administrative remedies, rather than a declaratory judgment action.[7] We therefore vacate the district court's holding and remand the Payette Lake Lessees' contract action for further proceedings before the district court.

Although we do not rule on the merits of the contract action, it must be observed that the Payette Lake Lessees face a daunting task in establishing that they have an unconditional right to renew their 2001 leases for a ten-year period on the same terms and conditions, including the 2.5% rental rate. They will also need to convince the district court that the provisions of the 2001 leases, which were drafted to comport with I.C. § 58-310A, are still valid despite this Court's holding that the statute is unconstitutional. Even if they are able to do that, the Board has a constitutional obligation to "secure the maximum long term financial return" on leases and sales of endowment lands. Idaho Const. art. IX, § 8. The Board has determined that, at a minimum, an annual rent of 4% of the fee-simple value of the property constitutes market rent, *i.e.*, the rent required for maximum financial return. The Payette Lake Lessees will need to convince the district court that the 2.5% rental rate constitutes market rent and that the Board erred in determining it to be 4%. If they are unsuccessful in this regard, they will have the unenviable task of trying to convince the court to force the adoption of an unconstitutional rental rate. And, of course, they will need to convince the district court that its seemingly reasonable interpretation of the lease language in the administrative proceeding was incorrect. But, those are matters that must be dealt with by the district court on remand.

---

[7] By framing their administrative proceeding as an issue of contract interpretation, rather than administrative action, the Payette Lake Lessees injected an element of confusion into the present proceeding. However, we look to the substance of the contract claim, rather than matters contained in peripheral proceedings. It is clear that the present contract claim is based on an interpretation of the 2001 leases and that the purported right sought to be enforced was a right that was acquired, if at all, in 2001.

14

## IV.
## CONCLUSION

The district court's judgment with respect to the Attorney General's constitutional challenge to I.C. § 58-310A is reversed, and we declare I.C. § 58-310A to be unconstitutional in its entirety. We vacate the district court's dismissal of the Payette Lake Lessees' contract claim and remand that matter for further proceedings before the district court. Costs to the Attorney General.

Chief Justice BURDICK, and Justices EISMANN and HORTON, and Justice Pro Tem TROUT CONCUR.